Antonio CHIARI, Plaintiff–Appellant,

v.

**CITY OF LEAGUE CITY,**
**Defendant–Appellee.**

No. 89–6310.

United States Court of Appeals,
Fifth Circuit.

Jan. 9, 1991.

---

Robert M. Wood, Kingwood, Tex., for plaintiff-appellant.

William Scott Helfand, Hirsch, Glover, Robinson & Sheiness, Houston, Tex., for defendant-appellee.

Before CLARK, Chief Judge, THORNBERRY, and HIGGINBOTHAM, Circuit Judges.

THORNBERRY, Circuit Judge:

Parkinson's disease is a degenerative nerve disorder, characterized by tremors and muscle rigidity. It currently affects over one million Americans, one of whom is Antonio Chiari. Chiari asks us to make an unpleasant decision: whether the physical debilitation caused by his disease has discomfited his efforts to overcome the physical demands of his job. We find that it has. Therefore, because Chiari is no longer qualified to be a construction inspector, the City of League City, Texas, did not discriminate against him under federal or Texas law by firing him, and we AFFIRM the decision of the district court, which granted summary judgment in favor of the City.

## I. FACTS AND PROCEDURAL HISTORY

Antonio Chiari is a sixty-six year old professional engineer who was diagnosed with Parkinson's disease in 1981. In 1982, he was hired by the City of League City, Texas, as a construction inspector. As a construction inspector, Chiari was responsible for approving construction plans proffered by private contractors and verifying that their work was completed properly. Almost fifty percent of the job was spent on the site of one or more construction projects, where he would have to visually inspect the contractors' work. These inspections required a significant amount of physical activity: walking around the construction site, climbing into ditches to inspect pipes, and climbing up the structure of uncompleted buildings. Chiari does not dispute this.

In early 1987, Joseph A. Murphy, the Director of Administrative Services for the City, noticed that Chiari was experiencing greater difficulty walking. At one point, he saw Chiari stumble while walking down the hallway of City Hall. Also, a private contractor told David J. Hegemier, Chiari's immediate supervisor, that Chiari had fallen while surveying the construction of a library. Hegemier notified Murphy of this report.

Murphy was concerned about Chiari's safety and the safety of others working with him. Consequently, in February 1987, he asked Chiari to see a neurosurgeon, Dr. Randhir Sinha. After examining Chiari, Dr. Sinha stated that Chiari had an unsteady "shuffling gait" and muscle rigidity, both of which caused him to lose his balance. Based on the physical demands of the job, Dr. Sinha concluded that Chiari was not fit to be a construction inspector.

In March 1987, Chiari was examined by his neurologist, Dr. Edward F. Good. After examining Chiari, Dr. Good wrote a letter to the City, which stated that he saw "no particular limitation of [Chiari's] work as long as he [did] not climb." He also wrote that he did not feel that Chiari posed "any hazard to himself or others on his job."

In April 1987, Murphy asked Chiari to see another neurosurgeon, Dr. Charles A. Borne. Dr. Borne's assessment was identical to Dr. Sinha's: Chiari had an unsteady "shuffling gait" and body rigidity, which occasionally caused him to lose his balance. Dr. Borne also concluded that Chiari was unable to continue his job as a construction inspector and that he would be a danger to himself and his co-workers if he were to continue. Dr. Borne noted, however, that Chiari's "intellect and intelligence functioning [were] excellent" and that he could handle any job that would not require physical exertion.

Murphy and Paul J. Nutting, the City Administrator, reviewed the reports from the three physicians and then conferred with Hegemier about Chiari's situation. They concluded that his physical limitations prevented him from continuing in his

present job.[1] They tried to find a way to restructure the job in order to accommodate his disease but could find no practical way of doing this. Chiari was fired on April 24, 1987.

In October 1988, Chiari filed suit against the City of League City in Texas court,[2] alleging that the City had violated the Texas Bill of Rights; a common law duty of good faith and fair dealing; the Texas Commission on Human Rights Act, *see* TEX. REV.CIV.STAT.ANN. art. 5221k, § 5.01 (Vernon Supp.1990); and section 504 of the Rehabilitation Act of 1973, *see* 29 U.S.C.A. § 794 (West 1985 & Supp.1990). One month later, the City removed the case to federal court. *See* 28 U.S.C.A. § 1441(b) (West 1973). In November 1989, the district court granted the City's motion for summary judgment and dismissed Chiari's state and federal claims. Chiari did not appeal the district court's decision to dismiss his common law and Texas Bill of Rights theories. *See* Fed.R.App.P. 28(a); *Price v. Digital Equip. Corp.*, 846 F.2d 1026, 1028 (5th Cir.1988). He does, however, continue to seek recovery under the state and federal statutes.

## II. JURISDICTION

Chiari's original petition asserted that the City had violated the Commission on Human Rights Act by discriminating against him because of both his disability and his age. *See* Plaintiff's Original Petition, Record at 100, 106 (citing TEX.REV.CIV. STAT.ANN. art. 5221k). The age discrimination claim was submerged by the handicap discrimination claims, however, and never resurfaced in any of Chiari's subsequent motions. Consequently, when the district judge categorically dismissed Chiari's state law claims, he neglected to mention Chi-

ari's age discrimination claim. *See* District Court Order at 4, Record at 3, 6.

Therefore, before addressing the merits of Chiari's appeal, we must determine whether the district court judgment was an appealable final judgment. *See* 28 U.S. C.A. § 1291 (West Supp.1990). Neither party has addressed this issue, but because we are a court of limited jurisdiction, we must raise it *sua sponte*. *See Morales v. Pan Am. Life Ins. Co.*, 914 F.2d 83, 85 (5th Cir.1990).

■■■ "A final determination as to one of several legal theories is not an appealable final judgment." *In re Bassak*, 705 F.2d 234, 237 (7th Cir.1983). *See Schexnaydre v. Travelers Ins. Co.*, 527 F.2d 855, 856 (5th Cir.1976) (refusing to accept an appeal because the district court had dismissed only one of the plaintiff's two legal theories). However, if a party abandons one of its claims, a judgment that disposes of the remaining theories is "final," as required by section 1291, if it is apparent that the district judge intended that the judgment dispose of all the claims before him. *See Vaughn v. Mobil Oil Exploration & Producing Southeast, Inc.*, 891 F.2d 1195, 1197–98 (5th Cir.1990). In this case, Chiari failed to urge his age discrimination claim before the district court; therefore, "the judgment of the district court did in fact dispose of all the live issues before it," *see id.* at 1198, and we have jurisdiction over his appeal.

## III. STANDARD OF REVIEW

In reviewing the district court's decision to grant summary judgment, we apply the same standard used by the trial court. *See* Fed.R.Civ.P. 56(c); *Weyant v. Acceptance Ins. Co.*, 917 F.2d 209, 212 (5th Cir.1990). The test is identical to that used for a directed verdict: "whether the evidence

---

**1.** Section 112.2 of the City's personnel rules states that "[a]n employee may be separated for incapacity due to medical reasons ... when the employee is no longer fit to perform the duties required for the position. A finding of incapacity shall be made through individual medical determination by competent authority as prescribed by the Personnel Director."

**2.** Chiari initially filed a complaint in federal court in March 1988. That action was dismissed without prejudice, and $500 in attorneys' fees were assessed against him and his attorney for failing to obey a Rule 12(e) order to replead his complaint with greater factual specificity. The Rule 11 sanction was affirmed on appeal. *See Chiari v. City of League City*, 866 F.2d 1419 (5th Cir.1989) (unpublished opinion).

presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986). Thus, for us to overturn the judgment in favor of the City, Chiari must demonstrate more than a factual dispute; he must show that there is a *"genuine* issue of *material* fact." *See id.* at 247–48, 106 S.Ct. at 2510 (emphasis in original).

## IV. REHABILITATION ACT OF 1973

### A. The Statute

Section 504 of the Rehabilitation Act of 1973 prohibits discrimination against otherwise qualified handicapped individuals in programs and activities that receive federal financial assistance. *See* 29 U.S.C.A. § 794(a) (West Supp.1990).[3] Its purpose is to assure that handicapped individuals receive the same treatment as those without disabilities. *See Traynor v. Turnage*, 485 U.S. 535, 548, 108 S.Ct. 1372, 1382, 99 L.Ed.2d 618 (1988). To qualify for relief under this statute, Chiari must prove that:

1. Parkinson's disease is a handicap, as that term is defined in section seven of the Act, 29 U.S.C.A. § 706(8)(A) (West Supp.1990);

2. he is "otherwise qualified" to be a construction inspector;

3. he worked for a "program or activity" which received federal financial assistance; and

4. he was fired from his job solely because of his handicap.

*See id.* The City admits that Parkinson's disease is a handicap, but it argues that Chiari is not "otherwise qualified" to be a construction inspector and that, even if he is, the department for which he worked never received federal funding.

### B. Was Chiari "Otherwise Qualified" to be a Construction Inspector?

To determine whether Chiari was "otherwise qualified" to be a construction inspector, we must conduct a two-part inquiry. First, we must determine whether Chiari could perform the "essential functions" of his job. *See School Bd. of Nassau County v. Arline*, 480 U.S. 273, 287 n. 17, 107 S.Ct. 1123, 1131 n. 17, 94 L.Ed.2d 307 (1987) (citing 45 C.F.R. § 84.3(k) (1985)). The City would not be permitted to fire him if the tasks that he could not perform bore only a marginal relationship to his job. *See* 45 C.F.R. § 84 appendix A (1989).[4] Second, if we determine that Chiari is not able to perform the essential functions of the job, we must decide whether any "reasonable accommodation" by the City would enable Chiari to perform those functions. *See Arline*, 480 U.S. at 287 n. 17, 107 S.Ct. at 1131 n. 17; *Brennan v. Stewart*, 834 F.2d 1248, 1262 (5th Cir.1988).

### 1. Could Chiari still perform the essential functions of his job?

■ The unchallenged affidavits from Murphy and Nutting demonstrate that Chiari must be able to visually inspect construction sites to perform the "essential functions" of a construction inspector's job. Chiari presented some evidence that he was still competent to make these inspections. For instance, his intellect was unaffected by the disease. Moreover, his immediate supervisor, David Hegemier, testified that Chiari's job performance was satisfactory at the time he was fired. The City's sole justification for maintaining that Chiari

---

**3.** Congress amended subsection 504(a) slightly in 1988, and this amended version is reprinted in the 1990 West Supplement. *See* 29 U.S.C.A. § 794 note (West Supp.1990). Although the amendment did not affect the substance of that subsection in any way, for the sake of clarity, we note that we are applying the statute as it existed when Chiari's suit was filed. *See Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208, 109 S.Ct. 468, 471, 102 L.Ed.2d 493 (1988). Chiari's suit is not affected by the recently enacted Americans with Disabilities Act of 1990 (ADA),

because that Act does not become effective until 1992. *See* ADA, § 108, Pub.L. No. 101–336, 104 Stat. 327, 337 (1990).

**4.** The regulations in 45 C.F.R. § 84, enacted by the Department of Health and Human Services, implement section 504. The Supreme Court has cited these regulations as authoritative pronouncements of Congressional intent. *See Arline*, 480 U.S. at 287 n. 17, 107 S.Ct. at 1131 n. 17; *Alexander v. Choate*, 469 U.S. 287, 301 n. 21, 105 S.Ct. 712, 720 n. 21, 83 L.Ed.2d 661 (1985).

was not capable of doing the job was its concern that his loss of balance would endanger him and others working with him.

The regulation that defines a "qualified handicapped person" under section 504 does not explain whether a court may consider the risk which an individual's handicap may pose to himself or others; it requires only that the person be able to perform "the essential functions of the job in question." *See* 45 C.F.R. § 84.3(k)(1) (1989). But courts which have applied section 504 unanimously have held that a handicapped individual cannot perform the essential functions of a job if his handicap poses a significant safety risk to those around him. *See, e.g., School Bd. of Nassau County v. Arline,* 480 U.S. 273, 287 n. 16, 107 S.Ct. 1123, 1131 n. 16, 94 L.Ed.2d 307 (1987) (noting that "[a] person who poses a significant risk of communicating an infectious disease to others in the workplace will not be otherwise qualified for his or her job if reasonable accommodation will not eliminate the risk"); *Bentivegna v. United States Dep't of Labor,* 694 F.2d 619, 622 (9th Cir.1982) (holding that a job qualification can exclude handicapped individuals if the qualification substantially promotes safe performance). To support its assertion that Chiari's presence would endanger others, the City presented affidavits from two neurosurgeons, Dr. Sinha and Dr. Borne, who stated that Chiari's unsteady "shuffling gait" and muscle rigidity, which caused him to lose his balance, prevented him from performing the job of construction inspector safely.

To prove that his presence at construction sites would not injure others, Chiari introduced the letter from Dr. Good, a neurologist, who wrote that Chiari would not pose a danger to himself or others on his job. But Dr. Good also wrote that he saw "no particular limitation of [Chiari's] work as long as he does not climb." Moreover, Dr. Good's testimony at his subsequent deposition completely enervated the impact of his letter. Dr. Good testified that, when he wrote the letter, he did not know what Chiari did; he knew only that Chiari was "some sort of engineer." When given Chiari's job description, Dr. Good agreed with the conclusions reached by Drs. Sinha and Borne: that Chiari could not move adequately to be a construction inspector and that it was possible that he could be a danger to others.

Chiari maintains that, despite the testimony of the three physicians, a jury still could find that he is capable of performing his job without endangering others. He contends, and the City concedes, that he has never fallen on anyone or injured anyone in the past. The risk, he states, is not that he will hurt others but that he will hurt himself, and he argues that this court cannot consider the risk of personal injury to the handicapped individual as one of the factors in determining whether that individual is qualified to do a job. We disagree.

The only evidence that Chiari presents to support the position that he should be free to make his own choices regarding his personal safety is one sentence from *Dothard v. Rawlinson,* 433 U.S. 321, 335, 97 S.Ct. 2720, 2730, 53 L.Ed.2d 786 (1977), a sex discrimination case under Title VII: "In the usual case, the argument that a particular job is too dangerous for women may appropriately be met by the rejoinder that it is the purpose of Title VII to allow the individual woman to make that choice for herself." But to the extent that a Title VII case is relevant to interpreting the Rehabilitation Act of 1973,[5] the holding of *Dothard* supports a conclusion that the City *can* exclude Chiari from a job because of fears about his safety. In *Dothard,* the Court held that an Alabama regulation which prohibited women from working as corrections officers in all-male prisons did not offend Title VII. *See id.* at 336–37, 97 S.Ct. at 2730. The Court held that the risk that the male inmates "would assault women guards because they were women" disqualified women for that position. *See id.*

---

5. Section 504 was based on Titles VI and IX of the Civil Rights Act of 1964, and, therefore, cases construing relevant portions of those Titles would be pertinent. *See* C. Richey, *Manual* on *Employment Discrimination Law and Civil Rights Actions in the Federal Courts* at F–1 (Federal Judicial Center 1988).

at 335, 97 S.Ct. at 2730. In fact, the Court disparaged the argument that a woman should be permitted to assume the risk of being assaulted: "More is at stake in this case, however, than an individual woman's decision to weigh and accept the risks of employment ... in a maximum-security male prison." *See id.*

■ Similarly, a significant risk of personal injury can disqualify a handicapped individual from a job if the employer cannot eliminate the risk. In regulations supplementing section 501 of the Rehabilitation Act, 29 U.S.C.A. § 791 (West Supp. 1990), the Equal Employment Opportunity Commission defines a "qualified handicapped person" as one who "can perform the essential functions of the position in question without endangering the health and safety *of the individual* or others...." *See* 29 C.F.R. § 1613.702(f) (1990) (emphasis added).[6] Section 501 refers to the duty of federal, rather than federally funded, employers to accommodate the handicapped, but it imposes a greater burden on the employer than section 504 does: federal employers must take affirmative action toward applicants and employees with handicaps. *See* 29 U.S. C.A. § 791(b). In *Mantolete v. Bolger*, 767 F.2d 1416, 1422 (9th Cir.1985), the court applied section 501 and held that the Postal Service could prohibit an applicant with epilepsy from operating a letter sorting machine if the Postal Service could show a reasonable probability that the applicant could suffer a substantial injury.

■ The existence of a personal safety requirement in the definition of a "qualified handicapped person" under section 501 indicates that such a requirement exists under section 504 as well. *See Mantolete,* 767 F.2d at 1421 (noting that section 501 definitions do not differ from section 504 definitions except that section 501 imposes an affirmative duty on federal employers to accommodate handicapped individuals). Therefore, under section 504, an individual is not qualified for a job if there is a

genuine substantial risk that he or she could be injured or could injure others, and the employer cannot modify the job to eliminate that risk. *See also Serrapica v. City of New York,* 708 F.Supp. 64, 73 (S.D.N.Y.) (applying section 504 and holding that individual with diabetes was not qualified to operate heavy sanitation equipment in traffic because of the risk of injury to himself and others), *aff'd,* 888 F.2d 126 (2d Cir. 1989) (unpublished opinion); *Davis v. Meese,* 692 F.Supp. 505, 519 (E.D.Pa.1988) (holding that diabetic was not qualified to be a special agent because certain assignments would be too risky for someone who is dependent on insulin), *aff'd,* 865 F.2d 592 (3d Cir.1989).

Like the possibility of endangering others, the threat of injury to the handicapped person cannot be based on unfounded fears or stereotypes; it must be veritable. *See Arline,* 480 U.S. at 284–85, 107 S.Ct. at 1129–30. The City has shown a substantial risk that Chiari could injure himself and, possibly, others if he continues to work as a construction inspector. Both the affidavits from Chiari's supervisors and his job description explain that a construction inspector must do a lot of climbing. Chiari presented no evidence to counter the testimony from the three physicians who stated that he should not climb. In fact, his own physician, Dr. Good, testified that Chiari was not fit for *any* job that required physical exertion and that, because his disease was degenerative, physical exertion would become progressively more dangerous to him. Consequently, the City proved that Chiari could not perform the essential functions required of a construction inspector. The next step is to determine whether the City also proved that it could not "reasonably accommodate" Chiari's disease.

*2. Could the City of League City reasonably have accommodated Chiari's handicap?*

■ Even if Chiari cannot perform the essential functions required of a construc-

---

**6.** This Circuit has held that the regulations promulgated to accompany section 501 "accurately express congressional intent." *See Prew-*

*itt v. United States Postal Serv.,* 662 F.2d 292, 308–09 (5th Cir. Unit A Nov. 1981).

tion inspector, he is still qualified for the job if the City could have modified it to eliminate the risk of injury. *See Prewitt v. United States Postal Serv.*, 662 F.2d 292, 310 (5th Cir. Unit A Nov. 1981). The City must accommodate Chiari's disease unless it "can demonstrate that the accommodation would impose an undue hardship on the operation of its program." *See* 45 C.F.R. § 84.12(a) (1989); *Prewitt*, 662 F.2d at 310 (quoting 29 C.F.R. § 1613.704(a)). For example, the City is not required to fundamentally alter its program. *See Alexander v. Choate*, 469 U.S. 287, 300, 105 S.Ct. 712, 719–20, 83 L.Ed.2d 661 (1985); *Southeastern Community College v. Davis*, 442 U.S. 397, 410, 99 S.Ct. 2361, 2369, 60 L.Ed.2d 980 (1979). Nor is the City required to find or create a new job for Chiari, *see Arline*, 480 U.S. at 289 n. 19, 107 S.Ct. at 1131 n. 19; after the accommodation, Chiari still must be able to perform the "essential functions" required of a construction inspector, *see id.* at 287 n. 17; 107 S.Ct. at 1131 n. 17.

■ The affidavits from Murphy, Nutting, and Hegemier demonstrate that they went beyond their statutory duty in an effort to accommodate Chiari's disease. First, they considered using another inspector to do on-site inspections, allowing Chiari to remain at a desk, reviewing the construction plans. This was not practical, however, because, in order to do his job properly, the on-site inspector would have to study the construction plans himself before going to a job site. *Compare Davis*, 442 U.S. at 409, 99 S.Ct. at 2368–69 (holding that section 504 did not require a college to provide an individual instructor for a deaf nursing student). Second, they considered creating a new position for Chiari, but budgetary constraints did not permit them to do this. Finally, they considered transferring Chiari to another job, but the City had no open positions that he was qualified to fill.[7] In the end, they could devise no plan that would have permitted Chiari to continue to work full-time for the City and would have provided the City with meaningful work.

As the City has produced evidence showing that it could not reasonably accommodate Chiari's disease, Chiari must present some evidence that accommodation is feasible in order to survive the City's motion for summary judgment. *See Prewitt*, 662 F.2d at 310. His only argument is that the City could have given him a part-time position rather than a full-time one. He points, first, to the regulations, which list "part-time or modified work schedules" as one of the suggested ways in which an employer can accommodate a person's handicap. *See* 45 C.F.R. § 84.12(b)(2). Next, he correctly adduces that the City's affidavits only referred to the City's inability to give him full-time work. Finally, as evidence that the City had part-time work which it could have given him, he cites the testimony of his supervisor, David Hegemier, who stated that "there were items of work that could have been done" in the City Engineer's office, although they would not amount to one full-time position.

Chiari's argument misconstrues the City's duty under section 504 to accommodate his medical condition. As explained above, the City does not have to create a new job for Chiari; therefore, it does not have to create a new part-time position for him. All the City must do is demonstrate that a part-time *schedule* would not accommodate Chiari's performance of the *job that he is currently doing*. Even if Chiari worked fewer hours, he still would not be able to climb buildings or climb into ditches, "essential functions" of a construction inspector's job.

Finally, Chiari's evidence is insufficient to preclude summary judgment even under his interpretation of section 504. He gave no evidence explaining the nature of the part-time work, whether the City could afford to provide him with that work, or whether he was qualified to do that job. "A mere scintilla of evidence in support of the plaintiff's position is insufficient to survive summary judgment." *See First Nat'l Bank of Commerce v. Monoco Agency Inc.*, 911 F.2d 1053, 1057 (5th Cir.1990).

---

7. Chiari has never applied to the City for another job more suited to his physical limitations.

*3. Summary*

■ The City proved that Chiari could not perform the "essential functions" of a construction inspector's job. It also proved that it could not reasonably accommodate Chiari's disease so that he could perform those functions. Therefore, Chiari was not "otherwise qualified" to be a construction inspector. *See* Rehabilitation Act, § 504(a), 29 U.S.C.A. § 794(a). An individual must be "otherwise qualified" for a job to obtain relief under section 504. Therefore, we need not reach the second step: whether the department for which Chiari worked "received or was directly benefited by federal financial assistance," *see Brown v. Sibley*, 650 F.2d 760, 769 (5th Cir.1981). The district court properly granted summary judgment dismissing Chiari's section 504 claim.

## V. TEXAS'S COMMISSION ON HUMAN RIGHTS ACT

■ In addition to seeking relief under the federal Rehabilitation Act of 1973, Chiari has invoked a remedy under Texas law: the Commission on Human Rights Act, TEX. CIV.STAT.ANN. art. 5221k, §§ 1.01 to 10.05 (Vernon 1987 & Supp.1990). The relevant portion of section 5.01(1) of that Act states that "[i]t is an unlawful employment practice for an employer ... to discharge an individual ... because of ... disability...."

The City asserts a variety of defenses to Chiari's Human Rights Act claim. For example, it asserts that Chiari did not suffer a "personal injury," and, therefore, it did not waive governmental immunity, to which it is entitled under the Texas Tort Claims Act. *See* TEX.CIV.PRAC. & REM.CODE ANN. § 101.021 (Vernon 1986). It also maintains that, unlike section 504 of the federal Act, article 5221k does not impose an accommodation requirement on an employer. Neither of these issues has been addressed by a Texas court, and we need not decide them.

The phrase "because of disability," used in section 5.01, "refers to discrimination because of or on the basis of a physical or mental condition that does not impair an individual's ability to reasonably perform a job." *See* TEX.CIV.PRAC. & REM.CODE ANN. § 1.04(b) (Vernon 1986). This definition is similar to the "otherwise qualified" requirement under section 504 of the Rehabilitation Act. *See Elstner v. Southwestern Bell Tel. Co.*, 659 F.Supp. 1328, 1346 (S.D. Tex.1987), *aff'd*, 863 F.2d 881 (5th Cir.1988) (unpublished opinion). In *Elstner*, the telephone company had removed the plaintiff from a job that required him to climb telephone poles. *See id.* at 1333. The court dismissed his complaint under the Human Rights Act, noting that his knee injury "impair[ed] his ability to reasonably perform a job that require[d] pole climbing." *See id.* at 1346. Similarly, we can affirm the dismissal of Chiari's state claim for the same reason that we affirmed the dismissal of his federal claim: the City demonstrated that Chiari was not qualified to be a construction inspector. *See Chevron Corp. v. Redmon*, 745 S.W.2d 314, 318 (Tex.1987) (noting that, "under article 5221k, a person may not sue if his handicap impairs his ability to do *that* particular job" (emphasis in original)).

## VI. CONCLUSION

The City of League City demonstrated that Chiari could not perform the "essential functions" required of a construction inspector and that it could not reasonably accommodate Chiari's handicap. Chiari produced no evidence that would entitle him to a jury determination of either issue. Therefore, he was not "otherwise qualified" to be a construction inspector, and the district court properly granted summary judgment dismissing his section 504 complaint. For the same reason, the district court correctly dismissed Chiari's claim under the Texas Commission on Human Rights Act: Chiari failed to produce any evidence that he could still be a construction inspector despite his disability.

The judgment of the district court is AFFIRMED.