kitchen 



TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-94-00390-CV








Austin State Hospital and Texas Department of 


Mental Health & Mental Retardation, Appellants




v.




Laura Kitchen, Appellee









FROM THE DISTRICT COURT OF TRAVIS COUNTY, 261ST JUDICIAL DISTRICT


NO. 91-11038, HONORABLE JOSEPH H. HART, JUDGE PRESIDING








 Laura Kitchen sued and obtained a judgment against the Austin State Hospital
("ASH") and the Texas Department of Mental Health & Mental Retardation ("TDMHMR") for
employment discrimination based on failure to accommodate a disability. The district court
awarded Kitchen back pay, lost benefits, and attorney's fees and ordered Kitchen reinstated. ASH
and TDMHMR appeal, claiming that their objections and the jury's answers to questions in the
court's charge should have precluded the deemed findings necessary for Kitchen to recover on her
theory that appellants failed to reasonably accommodate her employment at ASH. We will reverse
the judgment of the trial court and remand the cause for new trial.



FACTUAL BACKGROUND


 Kitchen was hired to work as a mental health aide in the Children and Adolescents
Psychiatric Services ("CAPS") division of ASH in December 1990. During the two-week
orientation preceding her initial assignment, Kitchen, who suffers from epilepsy, had a seizure
that disoriented her for several minutes. (1) Following her seizure, CAPS Administrator Eddie
McQueary gave Kitchen a "Physical Capacity Report" for her doctor to complete. The
neurologist who had treated Kitchen's epilepsy for ten years, Dr. Vincent Virgadamo, indicated
on the form that Kitchen was capable of the job activities listed on the report, (2) provided that
"seizure precautions" were taken. To clarify the meaning of "seizure precautions," McQueary
gave Kitchen a second physical capacity report for Virgadamo to complete. This second report
did not specifically request Virgadamo to explain the phrase "seizure precautions," but it did ask
him to verify that Kitchen could be alert 100 percent of the time.

 After faxing the second report, Kitchen had a telephone conversation with her
father and Virgadamo in which Virgadamo expressed reservations about the report. He asked
Kitchen to have someone at ASH call him. On January 24, 1991, Kitchen relayed Virgadamo's
concerns to McQueary and authorized an ASH physician to contact Virgadamo. McQueary
testified that he gave Kitchen a deadline of January 25 at 3:00 p.m. for the return of the second
report. When the report was not returned by the deadline, McQueary sent Kitchen to ASH's
Assistant Superintendent, Adolph Supak, with the recommendation that she be terminated for
insubordination. Supak terminated Kitchen's employment that day.

 There was conflicting testimony at trial about whether Kitchen had requested an
accommodation and the extent to which ASH accommodated employees by reassigning them to
other open positions within the organization. In addition to maintaining that Kitchen never
formally requested an accommodation, ASH asserted through McQueary that an accommodation
was not warranted unless Virgadamo refused to sign the second physical capacity report. 
Alternatively, ASH argued that absent clarification from Virgadamo, it was unable to determine
what accommodation was necessary to render Kitchen "otherwise qualified" for the position and
whether such accommodation was reasonable.



STATUTORY FRAMEWORK


 Kitchen brought her complaint pursuant to the former Texas Commission on
Human Rights Act (the "Act"), now found at chapter 21 of the Texas Labor Code. See Tex. Lab.
Code Ann. §§ 21.001-.262 (West 1995). (3) Sections of the Act which form the basis for Kitchen's
suit provide:



§ 21.051 Discrimination by Employer


An employer commits an unlawful employment practice if because of race, color,
disability, religion, sex, national origin, or age the employer:


 (1) fails or refuses to hire an individual, discharges an individual, or
discriminates in any other manner against an individual in connection
with compensation or the terms, conditions, or privileges of
employment . . . .


§ 21.105 Discrimination Based on Disability


 A provision in this subchapter or Subchapter B referring to
discrimination because of disability or on the basis of disability
applies only to discrimination because of or on the basis of a physical
or mental condition that does not impair an individual's ability to
reasonably perform a job.


§ 21.260 Relief for Disabled Employee or Applicant


 If the affected employee or applicant for employment has a disability,
a court shall consider the undue hardship defense, including the
reasonableness of the cost of necessary workplace accommodation
and the availability of alternatives or other appropriate relief.



Id. §§ 21.051, .105, .260 (emphasis added). Appellants initially protested that these sections of
the Act did not expressly provide that an employer's failure to make reasonable workplace
accommodation constituted an independent ground or theory of recovery for employment
discrimination. (4) The language and purpose of the Act persuade us, however, that a cause of
action based on an employer's failure to accommodate a disability was implied under the Act when
Kitchen filed suit.

 The Act has among its express purposes: (1) "the execution of the policies of Title
VII of the Civil Rights Act of 1964"; (2) securing freedom from discrimination in employment
transactions "for persons in this state, including persons with disabilities"; and (3) the
development of the "full productive capacities of persons of this state." Id. §§ 21.001(1), (3), (4). 
Because the Act seeks to promote federal civil rights policy and because Texas has little caselaw
interpreting the Act, this Court looks to analogous federal law when appropriate. Farrington v.
Sysco Food Servs., Inc., 865 S.W.2d 247, 251 (Tex. App.--Houston [1st Dist.] 1993, writ denied);
City of Austin v. Gifford, 824 S.W.2d 735, 739 (Tex. App.--Austin 1992, no writ). The Texas Act
is broader than Title VII, which does not apply by its terms to disability or handicap
discrimination. See 42 U.S.C. §§ 2000e-2(a), 2000e-16(a) (1988) (prohibiting discriminatory
employment practices based on race, color, religion, sex, or national origin); Stroud v. Delta
Airlines, Inc., 544 F.2d 892, 894 (5th Cir.), cert. denied, 434 U.S. 844 (1977) (Title VII does
not ban all discriminations, only those specifically enumerated). Instead, federal policy regarding
employment discrimination based on disability is found in the Rehabilitation Act of 1973, 29
U.S.C. §§ 701-797b (1988 & Supp. V 1993), and the Americans with Disabilities Act (the
"ADA"), 42 U.S.C. §§ 12101-12213 (Supp. V 1993). Consequently, we look to the most closely
analogous provisions of these laws in interpreting our state's Act with regard to disability
discrimination. (5)

 Our review of the relevant federal statutes convinces us that the jurisprudence
developed under section 504 of the Rehabilitation Act is most applicable to Kitchen's case. See
29 U.S.C. § 794 (1988 & Supp. V 1993). (6) Section 504 provides in pertinent part: "No otherwise
qualified individual with a disability . . . shall, solely by reason of her or his disability, be
excluded from participation in, be denied the benefits of, or be subjected to discrimination in . .
. any [federally funded] program or activity . . . ." Id. § 794(a) (1988). Sections 21.051 and
21.105 of the Texas Act make it an unlawful employment practice for an employer to discharge
a disabled person on the basis of a disability when the disability does not impair the individual's
ability to reasonably perform a job. Tex. Lab. Code Ann. §§ 21.051, .105 (West 1995). 
Facially, the Act more closely resembles section 504's broad prohibition against discrimination
than the prohibitions of other federal statutes that explicitly address an employer's failure to
accommodate. For example, the ADA includes provisions regarding "reasonable
accommodation," which resemble the Texas Act after its amendment in 1993, but do not parallel
as closely the wording of the Texas statute that governed Kitchen's cause of action. (7) However,
even section 504 incorporates the question of reasonable accommodation as part of the inquiry into
whether an individual is "otherwise qualified." School Bd. of Nassau County v. Arline, 480 U.S.
273, 288 (1987); Gilbert v. Frank, 949 F.2d 637, 642 (2d Cir. 1991). We agree with the Fifth
Circuit that the Texas Act's mandate that the individual be able to "reasonably perform a job"
requires the same inquiry. See Chiari v. City of League City, 920 F.2d 311, 319 (5th Cir. 1991).



THE COURT'S CHARGE


 The court submitted three questions to the jury. The first two asked the jury to
decide issues related to Kitchen's claim. Relevant portions of the questions and accompanying
instructions are:



Question No. 1


 Do you find from a preponderance of the evidence that [ASH and
TDMHMR] discharged [Kitchen] because of her disability? A "yes"
answer must be based on a preponderance of the evidence.


 You are instructed that [Kitchen] has a disability under Texas law.


 You are further instructed that "because of disability" means discrimination
because of or on the basis of a physical or mental condition that does not
impair an individual's ability to reasonably perform a job.


 ANSWER: No.


 If you answered "no" to Question No. 1, please answer Question No. 2. 
Otherwise, go on to Question No. 3.


Question No. 2


 Do you find from a preponderance of the evidence that [ASH and
TDMHMR] could not have reasonably accommodated [Kitchen] in her
employment at the Austin State Hospital? Answer "They could not have"
or "They could have." An answer of "They could not have" must be based
on a preponderance of the evidence. If you do not find a preponderance of
the evidence supports an answer of "They could not have," then answer
"They could have."


 In connection with this issue, you are instructed that "reasonable
accommodation" means steps, modifications, or adjustments that would
permit a person to perform a job with safety and efficiency.


 You are further instructed that in order to find that a person could not
perform a job with safety, there must be a reasonable probability that her
job performance would result in substantial harm to herself or others.


 You are further instructed in connection with this issue that factors in
determining whether a reasonable accommodation of a person with a
disability can be made include reasonableness of the cost of any necessary
workplace accommodation and the availability of alternatives.


 ANSWER: They could have.



 ASH and TDMHMR raised several objections to this charge at the initial charge
conference. First, they objected to the inclusion of question 2, arguing that the statute as it
existed at the time of Kitchen's suit did not impose a requirement of reasonable accommodation
upon the employer. Second, appellants objected to the instruction that the jury answer question
2 even if they answered "no" to question 1. Appellants insisted that the jury should reach
question 2 only if they found in question 1 that Kitchen had been discharged because of her
disability. In effect, appellants' objections demonstrate that they understood the issue in question
2 to be an affirmative defense, not a second theory under which Kitchen could prove
discrimination based on a disability. (8) This impression is strengthened by appellants' request for
a trial amendment to their pleading adding the affirmative defense of "undue burden," which the
court granted.

 After a lunch recess, but before the jury was returned, appellants again objected
to the court's charge. Apparently realizing that question 2 referred to a separate theory of
recovery and not an affirmative defense, appellants objected that the burden of proof on the
accommodation issue in question 2 improperly rested with them and not with Kitchen. The court
overruled the objection, saying that it came too late or should be overruled on the merits.

 After the jury returned its verdict, Kitchen moved for judgment and requested a
supplemental finding from the trial court that "[ASH and TDMHMR] failed reasonably to
accommodate [Kitchen] in her employment at Austin State Hospital." Kitchen averred as required
under Texas Rule of Civil Procedure 279 that this finding was a necessary element of her theory
of recovery for failure to provide reasonable accommodation, that the finding was supported by
legally and factually sufficient evidence, and that neither party requested submission nor objected
to the nonsubmission of this element. See Tex. R. Civ. P. 279. Appellants responded that
Kitchen was asking the court to deem a theory of recovery to which they had objected, and which
Kitchen had waived by omitting it from the charge. See Ramos v. Frito-Lay, Inc., 784 S.W.2d
667, 668 (Tex. 1990). Appellants further requested that the trial court disregard the jury's
findings to questions 2 and 3, arguing that the jury's answer to question 1 resolved the issue of
their liability against Kitchen and that question 2 was no more than an affirmative defense which
became irrelevant. The trial court granted Kitchen's motion for supplemental findings and
rendered judgment in her favor.



DISCUSSION


 This appeal asks us to decide (1) which party bears the burden of proof on the issue
of reasonable accommodation in an action for employment discrimination based on a theory of
failure to accommodate, (2) whether that burden was properly allocated in this case, and if not (3)
whether error was properly preserved so as to prevent a deemed finding on the issue by the trial
court.

 The United States Supreme Court in two decisive cases has carefully outlined the
allocation of the burdens of proof and production that apply to Title VII discrimination cases. See
Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248 (1981); McDonnell Douglas Corp.
v. Green, 411 U.S. 792 (1973); see also Texas Dep't of Human Servs. v. Hinds, 38 Tex. Sup. Ct.
J. 711 (June 8, 1995). Key to our resolution of the instant dispute is the Court's holding that
"[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated
against the plaintiff remains at all times with the plaintiff." Burdine, 450 U.S. at 253. As the
Court explained, however, the intermediate burdens of production alternate between the plaintiff
and the defendant and serve to eliminate claims at an earlier stage if no fact dispute exists that
requires the court or jury to reach this ultimate question. Id. at 253-55. (9) 

 The Burdine system of burden allocation clearly applies to those situations in which
an employer denies that an individual's disability played any role in its employment decision. See,
e.g., Barth v. Gelb, 2 F.3d 1180, 1186 (D.C. Cir. 1993). In many cases of disability
discrimination like Kitchen's, however, the employer may concede that the employee's disability
played a role in its employment decision, but the parties disagree whether the disability impedes
the employee's ability to perform the "essential functions" of the job or whether a reasonable
accommodation is feasible that would enable the employee to perform the job. Id. The Burdine
test is somewhat inappropriate in these situations because the propriety of the employment
decision turns on the objective claims of the parties that accommodation was or was not possible
rather than on the employer's subjective motivation. Id. Nonetheless, the basic principle is
constant: the burden remains with the plaintiff to prove her case of employment discrimination
by a preponderance of the evidence. Id.; see also Hinds, 38 Tex. Sup. Ct. J. at 717; Mason v.
Frank, 32 F.3d 315, 318 (8th Cir. 1994).

 In a cause of action alleging failure to accommodate, part of plaintiff's burden is
to demonstrate that she is "otherwise qualified" for the position from which she was excluded. 
She may show this qualification in one of two ways: (1) by proving that she can perform all
essential job functions without modifications or accommodations, or (2) that some reasonable
accommodation by the employer would enable her to perform the job. 29 C.F.R. § 1613.702(f)
(defining qualified handicapped person under § 504 of Rehabilitation Act as one who "with or
without reasonable accommodation can perform the essential functions of the position in question
without endangering the health and safety of the individual or others"); Arline, 480 U.S. at 288
n.17; Mantolete v. Bolger, 767 F.2d 1416, 1423 (9th Cir. 1985). Although there appears to be
consensus among the federal courts to this extent, opinions diverge on whether the plaintiff or the
defendant employer then bears the burden of persuading the trier of fact that accommodations are
or are not possible. Compare Barth, 2 F.3d at 1186-87 and Chandler v. City of Dallas, 2 F.3d
1385, 1395 (5th Cir. 1993) with Prewitt v. United States Postal Serv., 662 F.2d 292, 308 (5th
Cir. 1981) (burden of proving inability to accommodate always remains on employer because
employer has greater knowledge of essentials of job and can obtain advice concerning
accommodations from private and government sources). (10) One court has suggested that the
disparity may result from the obligation of the government to undertake affirmative action to
accommodate the disabled under section 501 of the Rehabilitation Act, an obligation not imposed
under section 504 on programs receiving federal funds. See Overton v. Reilly, 977 F.2d 1190,
1194 (7th Cir. 1992). However, even that court acknowledges a lack of consensus on the
allocation of burden to prove reasonable accommodation under section 504. Id. 

 The issue is further complicated by the availability of the "undue hardship" defense. 
Once the plaintiff has shown that a method of accommodation would allow her to perform the
essentials of the job, the defendant employer has two options: it may either attempt to refute the
plaintiff's evidence by demonstrating that the plaintiff would be unable to perform the essentials
of the job despite the proposed accommodation, or it may assume the burden of proving that the
proposed accommodation imposes on it an undue financial, logistic, or administrative burden. 
See Barth, 2 F.3d at 1186-87. As with other affirmative defenses, the defendant bears the burden
of proof for the undue hardship defense. Id. However, as the Barth court noted, "a grey area"
arises if a proposed accommodation is both unduly burdensome and unreasonable. Id. We
believe the confusion is lessened if the "reasonableness" of the accommodation is evaluated in
terms of the plaintiff's ability to do the job, while the question of "undue hardship" is linked to
the employer's financial and organizational ability to adopt the proposed modifications.

 Under this analysis, the plaintiff clearly retains the burden of proving by a
preponderance of the evidence that an accommodation is possible that would enable her to perform
the "essential functions" of the position she holds or seeks. Id.; Chandler, 2 F.3d at 1395; 29
C.F.R. §§ 1613.702(f), .704(a)-(b). By demonstrating that she could be reasonably
accommodated, the plaintiff proves that she is "otherwise qualified" for or can, under the Texas
Act, "reasonably perform a job." Tex. Lab. Code Ann. § 21.015; Chiari, 920 F.2d at 319.

 The court's charge in the instant cause essentially collapsed into one question the
issue of reasonable accommodation, on which the plaintiff bears the burden of proof, and the issue
of undue hardship, an affirmative defense on which the defendant bears the burden of proof. The
court subsumed the question of whether Kitchen was "otherwise qualified" by instructing the jury
that a reasonable accommodation was one that "would permit a person to perform a job with
safety and efficiency" and without "substantial harm to herself or others." However, the court
simultaneously instructed the jury to consider the cost of the accommodation and availability of
alternatives in deciding whether an accommodation could be made--factors a defendant would argue
in support of its affirmative defense that a particular accommodation is unduly burdensome.

 Although the caselaw suffers from a lack of clarity in setting forth the elements and
burdens in a discrimination action based on a failure to accommodate, and although appellants
failed to object to the charge as artfully as they might have, we believe their objections were
sufficient to preserve error. The objections clearly demonstrate that appellants believed question
2 to be an affirmative defense. Appellants find further support for their contention because the
question placed the burden of proof on them and because the instruction on the cost of
accommodation and availability of alternatives tracks the statutory language of section 21.260,
instructing the court to consider "the undue hardship defense." See Tex. Lab. Code Ann. §
21.260 (emphasis added). 

 Moreover, question 1 broadly asked whether appellants discharged Kitchen because
of her disability, with instructions tracking the language of sections 21.051 and 21.105. Once
their objection that the Act contained no accommodation requirement until the 1993 amendments
was overruled, appellants may have believed that question 1 incorporated both disparate treatment
and failure to accommodate theories of recovery, with question 2 remaining their affirmative
defense. (11) As appellants cogently argue, if question 1 incorporates the failure to accommodate
theory of recovery, the jury's negative finding on this question absolves them of liability. Even
Kitchen admits in a post-submission brief that "[f]ailure to make reasonable accommodation is
itself disability discrimination." Kitchen's petition alleged only general "disability discrimination"
without outlining the separate theories of disparate treatment and failure to accommodate. 
Therefore, although we do not believe that Kitchen's failure to amend her petition to reflect her
two theories precludes her recovery under the statute at that time, her failure to separately plead
the theories certainly lends credence to appellants' interpretation of question 1 as incorporating
both theories. However, because question 2 related clearly to neither an affirmative defense nor
to the special issue of accommodation, we decline to render judgment for appellants on the basis
of the jury's answer to question 1. See Spencer v. Eagle Star Ins. Co., 876 S.W.2d 154, 157
(Tex. 1994). We therefore overrule appellants' first point of error urging that the trial court erred
by refusing to disregard the jury's answers to questions 2 and 3.

 We do believe, however, that Kitchen bore the burden of proving that reasonable
accommodation was possible in order to show that she was "otherwise qualified," and that
appellants were entitled to raise the affirmative defense that the accommodation she proposed was
unduly burdensome. Given the confusion in the statute, caselaw, and instructions in this case, it
is not surprising that appellants failed to realize that question 2 embodied Kitchen's second theory
of recovery, not their affirmative defense, and failed to object to the misplaced burden of proof
at the original charge conference. The question remains whether the objection was timely. 

 Texas Rule of Civil Procedure 272 requires the court to allow counsel for the
parties "a reasonable time" to inspect and raise objections to the charge. The rule establishes as
an outside limit that all objections be presented "before the charge is read to the jury." Tex. R.
Civ. P. 272. Kitchen argues that the trial court has discretion to set the time allowed for
objections to the jury charge. See Hargrove v. Texas Employers' Ins. Ass'n, 332 S.W.2d 121
(Tex. Civ. App.--Amarillo 1959, no writ); Burton v. Williams, 195 S.W.2d 245 (Tex. Civ.
App.--Amarillo 1946, writ ref'd n.r.e.); Federal Underwriters Exch. v. Tubbe, 180 S.W.2d 473
(Tex. Civ. App.--Amarillo), rev'd on other grounds, 183 S.W.2d 444 (Tex. 1944). Although the
cases Kitchen cites generally support the proposition that a trial court has discretion to set the
amount of time counsel has to inspect and object to the charge, those cases are not on point. In
Hargrove and Burton, counsel failed to raise objections or request instructions until the court had
begun to read the charge to the jury. Hargrove, 332 S.W.2d at 123; Burton, 195 S.W.2d at 249. 
At that point, under the current rules, the trial court no longer had discretion to consider the
requests or objections. Methodist Hosps. of Dallas v. Corporate Communicators, Inc., 806
S.W.2d 879, 884-85 (Tex. App.--Dallas 1991, writ denied). In Tubbe, the court found that
appellant failed to show harm because he was able to prepare all of his objections in the hour and
a half the court allowed. Tubbe, 180 S.W.2d at 477. 

 The purpose of Rule 272 is to allow the court to correct any errors in the charge
before submitting it to the jury. Methodist Hosps., 806 S.W.2d at 884. In the instant cause, the
court did not set in advance a deadline for submitting requests or objections, and appellants raised
their objections before the jury returned to receive the charge. Moreover, the trial court did not
rely solely on a procedural technicality in overruling appellants' objection. Although it
admonished appellants that the objection came too late, the court also stated that the objection was
overruled even if timely. Because the trial court clearly considered the substance of appellants'
complaint, we believe that appellants have satisfied the requirement for preserving error in the
jury charge as articulated by the Texas Supreme Court. See State Dep't of Highways & Pub.
Transp. v. Payne, 838 S.W.2d 235, 241 (Tex. 1992) ("There should be but one test for
determining if a party has preserved error in the jury charge, and that is whether the party made
the trial court aware of the complaint, timely and plainly, and obtained a ruling.") (emphasis
added); Hinds, 38 Tex. Sup. Ct. J. at 718; cf. Alaniz v. Jones & Neuse, Inc., 878 S.W.2d 244,
245 (Tex. 1994) (challenge to charge not preserved despite Payne, because plaintiff failed to
follow specific rules for requests in Texas Rule of Civil Procedure 273).

 Because appellants' objection to the charge was sufficient to preserve error on
Kitchen's burden to prove that she was otherwise qualified for her position with reasonable
accommodation, we hold that the trial court erred in deeming her requested finding that appellants
failed to reasonably accommodate her employment at ASH. See Payne, 838 S.W.2d at 241
(finding on element of plaintiff's case cannot be deemed in her favor if opposing party objected
to omission of special issue); see also Spencer, 876 S.W.2d at 157 (proper objection to material
issue in defective charge entitles party to new trial); Dittberner v. Bell, 558 S.W.2d 527, 534
(Tex. Civ. App.--Amarillo 1977, writ ref'd n.r.e.). Contrary to Kitchen's assertions, the evidence
did not establish conclusively that appellants failed to reasonably accommodate her; although the
jury certainly may have determined on this record that ASH's conduct in Kitchen's dismissal
lacked good faith, the burden was Kitchen's to persuade the jury that reasonable accommodations
were possible that would have rendered her otherwise qualified for her position. Similarly, issues
relating to appellants' affirmative defense of "undue burden" should have been more clearly
articulated and allocated to a separate question. Accordingly, we sustain appellants' second point
of error.


CONCLUSION


 We hold that Kitchen bore the burden of proving that reasonable accommodation
was possible as part of her burden of establishing that she was otherwise qualified for her position
at ASH. Appellants properly attempted through their objections to segregate the issue of
reasonable accommodation on which Kitchen bore the burden of proof and their affirmative
defense that any accommodation was unduly burdensome. Because appellants' objections were
sufficient to preserve error, the trial court should not have deemed the finding that appellants
failed to reasonably accommodate Kitchen. We therefore reverse the judgment of the trial court
and remand the cause for new trial on Kitchen's claim of failure to accommodate.




 

 Bea Ann Smith, Justice

Before Justices Powers, Jones and B. A. Smith

Reversed and Remanded

Filed: June 21, 1995

Publish

1.   Testimony regarding the seizure indicates that Kitchen was "unaware" of her
surroundings for 30 seconds to a minute and was disoriented for a couple of minutes after
the seizure ended. Kitchen herself testified that the seizure was typical of other seizures
she has had.
2.   McQueary also apparently gave Kitchen a copy of the job description for her
position, which she failed to forward to Virgadamo.
3.   At the time of trial, the Act was found at Texas Revised Civil Statutes article 5221k. 
Because the recodification of the Act in the Labor Code effected no substantive change in
the law, we cite the current code for convenience. See Act of May 12, 1993, 73d Leg.,
R.S., ch. 269, §§ 5, 6, 1993 Tex. Gen. Laws 987, 1273.
4.   When it recodified the Act in the Labor Code, the legislature concurrently amended
the Act to make an employer's failure or refusal to furnish reasonable workplace
accommodation an unlawful employment practice. See Act of May 14, 1993, 73d Leg.,
R.S., ch. 276, § 5.17, 1993 Tex. Gen. Laws 1285, 1288-89. However, the amended
provisions apply only to complaints filed with the Commission on Human Rights on or after
September 1, 1993. Id. at 1292. Kitchen filed her complaint with the Commission on Human
Rights on February 8, 1991.
5.   Although they provide distinct statutory bases for bringing claims of employment
discrimination, federal courts have looked to Title VII precedent in interpreting the
Rehabilitation Act of 1973. See, e.g., Barth v. Gelb, 2 F.3d 1180, 1183-84 (D.C. Cir. 1993)
(looking to Title VII precedent on religious discrimination). In turn, the ADA adopts the
powers, remedies, and procedures of Title VII and directs the agencies with enforcement
authority under the ADA to "develop procedures to ensure that administrative complaints filed
under [the ADA] and under the Rehabilitation Act of 1973 are dealt with in a manner that
avoids duplication of effort and prevents imposition of inconsistent or conflicting standards." 
42 U.S.C. § 12117(b) (Supp. V 1993); see also 29 U.S.C. §§ 791(g), 794(d) (synchronizing
standards used to determine violations under the Rehabilitation Act with those employed under
the ADA).
6.   As codified, sections 501 and 504 of the Rehabilitation Act of 1973 appear at 29
U.S.C. §§ 791 and 794, respectively. Because most cases refer to these sections by their
act rather than code designations, we will follow this convention.
7.   The ADA includes in its definition of "discrimination" a failure to make "reasonable
accommodations to the known physical or mental limitations of an otherwise qualified
individual with a disability." See ADA, 42 U.S.C. § 12112(b)(5)(A) (Supp. V 1993). The
ADA also defines "qualified individual with a disability" as an individual who "with or
without reasonable accommodation, can perform the essential functions of the employment
position that such individual holds or desires." Id. § 12111(8). Finally, the ADA explicitly
defines "reasonable accommodation." See id. § 12111(9). Because the ADA refers directly to
the issue of "reasonable accommodation," it more closely resembles the Texas provisions
following the enactment of § 5.17 of the Labor Code.


 Section 501 of the Rehabilitation Act is also inapposite as a guide because it imposes an
affirmative duty on employers which finds no counterpart in the Texas Act. Section 501
requires federal employers to submit an "affirmative action program plan for the hiring,
placement and advancement of individuals with disabilities" including "a description of the
extent to which and methods whereby the special needs of employees who are individuals with
disabilities are being met." 29 U.S.C. § 791(b) (1988) (emphasis added); see also Mantolete
v. Bolger, 767 F.2d 1416, 1421 (9th Cir. 1985) (observing § 501's explicit requirement that
accommodation of the handicap be considered in determining handicapped person's
qualification for employment); Prewitt v. United States Postal Serv., 662 F.2d 292, 307 (5th
Cir. 1981) (same). As appellants note, this affirmative duty to create an action program under
§ 501 may shift the burden to the defendant employer to show that no reasonable
accommodation was possible. See Overton v. Reilly, 977 F.2d 1190, 1194 (7th Cir. 1992).
8.   Appellants made a further objection in regard to question 3 that reinforces this
interpretation. Question 3 asked the jury to award Kitchen attorney's fees if they
answered either "yes" to question 1 or "they could have" to question 2. Appellants requested
the instruction to read that the jury proceed to question 3 only if they answered question 1
affirmatively and found the appellants could have accommodated Kitchen in question 2.
9.   In Burdine the Court applied these burdens of proof and production in a case alleging
disparate treatment discrimination, i.e., the blatant discrimination that stems from simple bias
against the characteristic in question. The plaintiff must first establish her prima facie case,
demonstrating by a preponderance of the evidence that she was qualified for the position and
that the circumstances of termination give rise to an inference of unlawful discrimination. 
Burdine, 450 U.S. at 253. If established, the prima facie case creates a presumption that the
employer unlawfully discriminated against the employee. Id. at 254. The burden then shifts
to the defendant employer to produce evidence sufficient to raise a genuine issue of fact that its
employment action was not the result of discriminatory animus but instead was motivated by a
legitimate reason. Id. In so doing, the defendant employer rebuts the presumption raised by
the plaintiff's prima facie case and frames the factual issue requiring ultimate resolution by the
trier of fact. The burden of production then returns to the plaintiff and merges with her
ultimate burden of persuading the trier of fact that the employer's proffered reason for its
action is mere pretext and that she has been the victim of unlawful discrimination. Id. at 255. 
10.   Although Prewitt was a § 501 case, its rationale for placing the burden of proving
inability to accommodate on the employer was based on an article discussing the burden under
a § 504 cause of action. Prewitt, 662 F.2d at 308 (citing Donald J. Olenick, Accommodating
the Handicapped: Rehabilitating Section 504 After Southeastern, 80 Colum. L. Rev. 171, 187-88 (1980)).
11.   Appellants followed with a request for an additional instruction to question 1, citing
Chevron v. Redmon, 745 S.W.2d 314, 318 (Tex. 1987), for the proposition that no cause of
action exists under § 21.051 if a person's disability impairs her ability to do the particular job
for which she was hired. Apparently, appellants were attempting to limit the jury's
consideration of any accommodation based on job reassignment. This request further indicates
that they may have believed question 1 encompassed the theory of failure to accommodate.


 We also note that although an employer need not find another job for a disabled
employee no longer qualified for her present position, under federal law some job
reassignment or assignment to "alternative employment opportunities" consistent with the
employer's existing policies may be required. While reserving opinion on the accuracy or
desirability of the policy, we note that some authority suggests an employer's duty of
accommodation may not extend this far under the Texas Act. Compare Arline, 480 U.S. at
289 n.19 with Chiari, 920 F.2d at 319 (citing Chevron, 745 S.W.2d at 318, for proposition
that Texas Act does not impose duty of reassignment).