Victor BURCIAGA, Sr.

v.

Togo D. WEST, Jr., Secretary
of the Army.

No. EP–97–CA–188–DB.

United States District Court,
W.D. Texas,
El Paso Division.

March 4, 1998.

Order Amending Opinion on
Denial of Reconsideration
April 1, 1998.

Alejandro Soto, El Paso, TX, for Plaintiff.

Kurt A. Didier, Special Assistant U.S. Attorney, El Paso, TX, for Defendant.

## MEMORANDUM OPINION AND ORDER

BRIONES, District Judge.

On this day, the Court considered Defendant's Motion for Summary Judgment filed on January 15, 1998, in the above-captioned cause. Plaintiff filed a Response on February 2, 1998. Defendant then filed a reply letter to Plaintiff's Response on February 4, 1998. In turn, Plaintiff filed a reply to Defendant's reply letter on February 17, 1998.[1] After due consideration, the Court is of the opinion that the Motion should be granted for the reasons that follow.

### FACTS

Plaintiff is a Hispanic male who is and was at least the age of 40 at all times relevant to this Motion. He was employed as a Motor Vehicle Operator, Wage–Grade 7 ("WG–7"), in the Fort Bliss Transportation Division Motor Pool, in El Paso, Texas. He first became employed with the Department of the Army ("Defendant") in September 1984. In July through August of 1992, Plaintiff underwent abdominal surgeries. As a result of these surgeries, Dr. S.M. Alavi indicated in a Disability Certificate dated September 24, 1992, that Plaintiff was restricted from lifting over 40 pounds "until further notice."

Plaintiff asserts, and the Court takes as true for purposes of this Motion, that he complained of ethnic slurs made by others while at work. He made the complaints to his union as early as November 1993 and as recently as early March 1996. Plaintiff's supervisors were not aware of these complaints at the time they were made.

On April 1, 1994, Defendant determined that Plaintiff's position, along with three other similar positions, would be abolished under a reduction-in-force ("RIF") program.[2] Like Plaintiff, the three other persons whose positions were to be abolished were Hispanic. Defendant placed Plaintiff in an RIF Avoidance Placement Program ("RAPP"), in an effort to find him another position. Under the RAPP, Plaintiff temporarily was assigned to a WG–2 Laborer position, effective October 2, 1994, pursuant to a Statement of Understanding signed and dated by Plaintiff on September 29, 1994. Through the Statement of Understanding, Plaintiff represented that he understood "that a medical examination [was] required for [his] placement into this position and that failure to provide complete and accurate information regarding [his] medical condition can serve as a basis for separation from Federal Service." Plaintiff never took the physical because, he avers in an affidavit dated June 28, 1996, he "was never advised formally that [he] was to take the physical exam to determine his lifting capability for RIF purposes."[3]

By memorandum dated February 2, 1995, Defendant informed Plaintiff that he would be demoted to the position of WG–6 Motor Vehicle Operator pursuant to the RIF. Defendant stated that the demotion would become effective on June 11, 1995. Defendant also attached a position description to the notice which indicated that WG–6 Motor Vehicle Operators were required to handle ob-

---

1. The Court notes that Plaintiff attached several exhibits to the reply letter. However, because these attachments were filed late, the Court exercised its discretion under Federal Rule of Civil Procedure 56(e) and did not take these attachments into consideration for purposes of the instant Motion. Defendant also submitted for the Court's review a copy of *Sherrod v. American Airlines, Inc.*, 132 F.3d 1112 (5th Cir.1998). Plaintiff then filed a reply letter on February 26, 1998.

2. There is a dispute as to whether there were four or eight motor vehicle operator positions abolished under the RIF. Defendant asserts eight positions were abolished, with four of these held by Hispanics and the other four held by non-Hispanics. Plaintiff, on the other hand, insists four positions were abolished, all held by Hispanic persons. For purposes of this Motion, the Court will assume that there were four affected workers and that all were Hispanic.

3. Not all persons were required to undergo the physical exam in connection with the RIF because some individuals—unlike Plaintiff—were placed into jobs with the same physical requirement as their old position.

jects up to 50 pounds[4] while loading and unloading cargo from vehicles.

While performing under his laborer assignment on February 13, 1995, Plaintiff alleges he sustained a work-related injury. Because of this injury, he filed a claim on February 21, 1995, for benefits with the Office of Worker's Compensation Programs ("OWCP"). Also in connection with this injury, Plaintiff underwent surgery on April 5, 1995, performed by Dr. Alavi. By Compensation Order dated April 26, 1995, the OWCP denied Plaintiff's claim for benefits. Through a Work Restriction Evaluation dated May 8, 1995, Dr. Alavi indicated that Plaintiff could lift "0–10 lbs" for "0" hours per day as a result of the injury and surgery; that Plaintiff should limit his sitting, walking, bending, and standing to intermittent frequency for anywhere from one to three hours per day; and that Plaintiff should not squat, climb, kneel, or twist. Dr. Alavi also indicated that Plaintiff could reach or work above the shoulders, perform simple grasping, and work eight hours a day. Dr. Alavi opined in the Evaluation that Plaintiff would not need vocational rehabilitation to return to work.[5]

In a notice to Plaintiff dated June 9, 1995, Defendant made the following assertions. First, Defendant canceled Plaintiff's demotion of February 2, 1995 (wherein Plaintiff was demoted to the position of WG–6 Motor Vehicle Operator) because his medical examination (presumably Dr. Alavi's May 8 report) indicated that Plaintiff had physical limitations that Defendant was unable to accommodate. Second, Defendant stated that Plaintiff still was subject to the RIF. Third, Defendant noted that while Plaintiff had assignment rights to a vacant position or to a position occupied by an employee with a lower retention standing, Defendant had reviewed his qualifications and determined that no positions were available that satisfied Plaintiff's assignment rights. Fourth, Plaintiff would be allowed to continue under a duty status in his then-present position (presumably as a WG–2 Laborer) until his separation was effected under the RIF on October 13, 1995. Finally, Defendant indicated that it would continue trying to place Plaintiff in a position under his assignment rights until October 13, 1995, when the RIF would become effective.

As to Defendant's efforts to place Plaintiff in a position, Plaintiff was considered for eighteen alternative positions. These include three Motor Vehicle Operator positions, fourteen Materials Handler positions, and one GS–5 Firefighter position. All of these positions, however, required lifting in excess of 45 pounds or strenuous physical activity. Defendant did not consider Plaintiff for placement in clerical positions because his personnel file did not show that he had progressively responsible clerical office experience or other similar work.[6] Such experience would have shown an ability to acquire particular knowledge and skills required to perform clerical work. Also, Plaintiff's file did not reveal that he could type, which was required for the clerical and administrative positions. Plaintiff returned to work on June 19, 1995.

In a notice to Plaintiff dated June 20, 1995, Defendant stated that it was offering him a different set of duties to accommodate his physical limitations.[7] These newly-offered duties included setting appointments for and administering driving tests. Plaintiff accepted the light-duty assignment and was thus occupied from June 21 to October 13, 1995, when he was separated under the RIF. By letter dated June 26, 1995, Dr. Alavi notified

4. There is an issue as to whether the job description requires handling objects up to 100 pounds or 50 pounds. For purposes of this Motion, the Court adopts the 50 pound limit because this is more favorable to Plaintiff's case.

5. Plaintiff contends that Defendant improperly relied on the May 8 medical restrictions, which he asserts were only temporary.

6. Defendant asserts it did consider Plaintiff for clerical positions. However, the Declaration

(dated February 4, 1998) of Sherry D. Moody, Personnel Management Specialist with Defendant, states that Plaintiff "was not considered for placement in clerical positions based on his experience as documented in his official personnel folder."

7. Plaintiff also was notified of his entitlement to $14,357.52 in severance pay, to be paid in 29 weekly installments.

Defendant "that effective September 15, 1995. [Plaintiff's] medical restrictions such as (squatting, kneeling, twisting, climbing, intermittent sitting, walking, standing and bending) will no longer apply.... [H]is lifting and carrying restrictions is [sic] 20–25 lbs. because of his past medical history."

On August 30, 1995, Plaintiff filed a formal Equal Employment Opportunity ("EEO") complaint regarding his separation of October 13, 1995, under the RIF. Plaintiff alleged that his removal under the RIF was discriminatory because it was based on his national origin, his mental and physical disabilities, and in reprisal due to complaints he had filed with his union regarding ethnic slurs in the workplace, overtime, and the RIF process.[8] Plaintiff also filed an appeal with the Merit Systems Protection Board ("MSPB") on November 1, 1995. The MSPB, however, dismissed the appeal without prejudice as premature, because Defendant had not issued a final decision on the EEO complaint and 120 days had not elapsed. By letter dated November 6, 1995, Plaintiff requested to amend his formal EEO complaint to allege age as an additional basis for discrimination.

Plaintiff then filed a timely appeal with the MSPB on January 11, 1996. Defendant, in turn, submitted a copy of its Office of Complaint's Investigation Report of Investigation, dated January 22, 1996, to Plaintiff. The report concluded that "management provided legitimate, non-discriminatory explanations for the contested actions, management's explanations were not shown to be pretext to mask prohibited discrimination." The report further stated that Defendant attempted to use Plaintiff for any duties that could accommodate his known, physical limitations.

By decision dated May 10, 1996, the MSPB, through Judge Michael Daugherty, concluded that, 1) the RIF was bona fide; 2) Defendant properly defined Plaintiff's competitive area; 3) Plaintiff's position was properly abolished and that he was properly released from his competitive level; 4) Defendant properly applied the RIF regulation; and 5) Plaintiff did not prove discrimination on the basis of disability, national origin, or age. Although Plaintiff appealed this decision to the full MSPB on October 22, 1996, the three-member MSPB denied Plaintiff's petition for review, stating that the MSPB decision was final. Plaintiff subsequently appealed the MSPB decision to the Equal Employment Opportunity Commission ("EEOC"), which also concurred with the MSPB. The EEOC, in its decision dated April 3, 1997, indicated that it considered Plaintiff "disabled" on account of his diabetes and hypertension which were "poorly controlled." The EEOC, however, did not find Plaintiff a " 'qualified' disabled person." The EEOC concluded that Plaintiff did not prove discrimination based on national origin, age, disability, and/or reprisal. Plaintiff filed the Complaint now before the Court on May 5, 1997.

### DISCUSSION

Plaintiff brought his Complaint under § 501 of the Rehabilitation Act of 1973, as amended, 29 U.S.C.A. § 791 et seq. (West 1985 & Supp.1997) ("Rehabilitation Act"); Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C.A. § 2000e et seq. (West 1994 & Supp.1997) ("Title VII"); and the Age Discrimination in Employment Act of 1973, as amended, 29 U.S.C.A. § 621 et seq. (West 1985 & Supp.1997) ("ADEA"). Specifically, Plaintiff alleges that he as been discriminated against by Defendant based on his age, national origin, and disability, resulting in his termination from employment. Plaintiff further avers retaliation for participating in the Equal Employment Opportunity Process. Finally, Plaintiff, in his Response filed on February 2, 1998, raises several non-discriminatory claims for the first time in this cause.

Defendant has moved for summary judgment on all claims. It argues that Plaintiff cannot prove the essential elements of his case under any of the proffered theories. Defendant further asserts that there are no genuine issues of material fact to adjudicate and therefore requests the Court to enter judgment in its favor. After first reviewing

---

8. Plaintiff also asserts he suffers from diabetes, hypertension, skin rashes, and post traumatic stress disorder ("PTSD"). He first informed management of his PTSD in July of 1995.

the applicable standards under a motion for summary judgment, the Court will address in turn the various theories upon which Plaintiff bases his Complaint and which Defendant maintains are untenable under the facts recited above. The Court then will discuss briefly, and hypothetically, Plaintiff's non-discrimination claims—which are not properly before the Court.

### Standards on Motion for Summary Judgment

Rule 56 of the Federal Rules of Civil Procedure ("Rule 56") authorizes a motion for summary judgment so that actions which fail to present any genuine issue of material fact may be disposed of before trial. The standard for granting summary judgment requires that there be no genuine issue of material fact and that the moving party be entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–86, 106 S.Ct. 1348, 1355, 89 L.Ed.2d 538 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.1994). Indeed, Rule 56(e) specifically requires that,

> [w]hen a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but ... must set forth specific facts showing that there is a genuine issue for trial.

When making a determination under Rule 56, factual questions and inferences are viewed in a light most favorable to the non-movant. *Lemelle v. Universal Mfg. Corp.*, 18 F.3d 1268, 1272 (5th Cir.1994). That is, the Court examines the pleadings, affidavits, and other evidence introduced in the motion, resolves any factual doubts in favor of the non-movant, and determines whether a triable issue of fact exists. *Aulds v. Foster*, 484 F.2d 945, 946 (5th Cir.1973). To be sure, the Court's duty under a motion for summary judgment "is confined ... to issue-finding [and not] to issue-resolution." *Gallo v. Pru-*

*dential Residential Services*, 22 F.3d 1219, 1224 (2d Cir.1994).

Under summary judgment in employment discrimination cases, the focus is on whether a genuine issue exists as to whether the defendant intentionally discriminated against the plaintiff. *Grimes v. Texas Dept. of Mental Health*, 102 F.3d 137, 139 (5th Cir.1996) (citing *LaPierre v. Benson Nissan, Inc.*, 86 F.3d 444, 447–48 (5th Cir.1996)). Thus, in response to motions for summary judgment, it is imperative that the non-moving party "present evidence—not just conjecture and speculation—that the defendant retaliated and discriminated against plaintiff ...." *Id.* at 140 (Title VII case).

A different standard of review, however, is applicable to the findings of the MSPB. First of all, had Plaintiff properly challenged the MSPB's decision in his Complaint, the Court would have had jurisdiction over the matter because this cause would have contained a mix of discrimination and non-discrimination claims. *See, e.g., Jones v. Secretary, Dept. of Army*, 912 F.Supp. 1397, 1413 (D.Kan.1995). Otherwise, the Fifth Circuit Court of Appeals would have been the proper forum for a purely non-discrimination cause of action challenging the MSPB's decision. *See Jones*, 912 F.Supp. at 1413; 5 U.S.C.A. § 7703(c) (West 1996 & Supp.1997). In any event, the findings of the MSPB must be affirmed unless they are arbitrary, capricious, not in accordance with law, obtained without procedures required by law, rule or regulations, or unsupported by substantial evidence. *See Jones*, 912 F.Supp. at 1413; 5 U.S.C.A. § 7703(c). Again, this standard would have applied to a challenge of the MSPB's decision had such a cause of action been raised properly, as discussed below.

### The Rehabilitation Act

 The Rehabilitation Act prohibits discrimination against otherwise qualified individuals with handicaps in programs that receive federal assistance. *See* 29 U.S.C.A. § 794(a) (West 1985 & Supp.1997). The purpose of the Act is to ensure that handicapped persons are treated the same as those without disabilities. *Chandler v. City of Dallas*, 2 F.3d 1385, 1389 (5th Cir.1993); *Chiari v. City of League City*, 920 F.2d 311, 315 (5th Cir.

1991). The analysis for a claim brought under the Rehabilitation Act is straightforward. *See Heilweil v. Mount Sinai Hospital,* 32 F.3d 718, 722 (2d Cir.1994) (citing *Gallo,* 22 F.3d at 1224–25).[9] The plaintiff bears the initial burden of establishing a prima facie case. Once this burden is met, the burden then shifts to the employer. The employer's burden is to " 'articulate a legitimate non-discriminatory reason for discharging the employee' " that is unrelated to the handicap. *Heilweil,* 32 F.3d at 722 (quoting *Gallo,* 22 F.3d at 1224–25). If the employer meets this burden, the burden then shifts to the plaintiff to establish that the reason provided by the employer is a pretext for discrimination. *Id.* However, if the employer uses the handicap as the reason for the adverse employment action, then its burden is " 'to rebut the inference that the handicap was improperly taken into account by going forward with evidence that the handicap is relevant to qualifications for the position.' " *Heilweil,* 32 F.3d at 722 (quoting *Doe v. New York Univ.,* 666 F.2d 761, 776 (2d Cir.1981)). In the end, however, "[t]he plaintiff bears the ultimate burden of proving by a preponderance of the evidence that she is qualified despite her handicap." *Heilweil,* 32 F.3d at 722.

To established a prima facie case under the Rehabilitation Act, a plaintiff must prove that, 1) he was an "individual with handicaps";[10] 2) he was "otherwise qualified"; 3) he worked for a "program or activity" that received federal financial assistance; and 4) he was adversely treated solely because of his handicap. *Chandler,* 2 F.3d at 1390;

**9.** The Second Circuit in *Gallo* applied the familiar three-step burden-shifting analysis developed in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802–04, 93 S.Ct. 1817, 1824–25, 36 L.Ed.2d 668 (1973) and *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 252–53, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981). *Gallo* is an ADEA case.

**10.** The definition of "disability" under the Americans with Disabilities Act ("ADA"), 42 U.S.C.A. § 12102(2) (West 1995 & Supp.1997), is substantially equivalent to the definition of "individual with handicaps" under the Rehabilitation Act. *Dutcher v. Ingalls Shipbuilding,* 53 F.3d 723, 725 n. 4 and 727 n. 14 (5th Cir.1995). In fact, Congress intended that case law developed under the Rehabilitation Act be applicable to the term "disability" as used in the ADA. *Id.* at 727 n. 14. It follows therefore that case law developed un-

*Chiari,* 920 F.2d at 315. The Act defines an "individual with handicaps" as a person "who (i)· has a physical or mental impairment which substantially limits one or more of such person's major life activities, (ii) has a record of such an impairment, or (iii) is regarded as having such an impairment." 29 U.S.C.A. § 706(8)(B) (West 1985 & Supp. 1997); *see also Chandler,* 2 F.3d at 1390. A physical impairment is,

> any physiological disorder or condition, cosmetic disfigurement, or anatomical loss affecting one or more of the following body systems: neurological; musculoskeletal; special sense organs; respiratory, including speech organs; cardiovascular; reproductive, digestive, genito-urinary; hemic and lymphatic; skin; and endocrine....

45 C.F.R. § 84.3(j)(2)(i) (1998); *see also Chandler,·* 2 F.3d at 1390. The regulations also indicate that a person is regarded as having an impairment if he,

> (A) has a physical or mental impairment that does not substantially limit major life activities but that is treated by [an employer] as constituting such a limitation;
>
> (B) has a physical or mental impairment that substantially limits major ·life activities only as a ·result of the attitudes of others toward such impairment; or
>
> (C) has none of the [above described impairments] but is treated by [am employer] as having such an impairment.

45 C.F.R. § 84.3(j)(2)(iv) (1998).

Major life activities include, "caring for one's self, performing manual tasks, walking,

der the ADA also is helpful in interpreting relevant language of the Rehabilitation Act. *See Myers v. Hose,* 50 F.3d 278, 281 (4th Cir.1995) ("whether suit is filed against a federally-funded entity under the Rehabilitation Act or against a ·private employer under the ADA, the substantive standards for determining liability are the same."); *Hamm v. Runyon,* 51 F.3d 721, 725 (7th Cir.1995); *see also* 42 U.S.C.A. § 12117(b) (West 1995 & Supp.1997) (administrative complaints filed under either the Rehabilitation Act · or the ADA should be "dealt with in a manner that avoids duplication of and prevents imposition of inconsistent or conflicting standards for the same requirements."); *cf. Chandler,* 2 F.3d at 1391 (refusing to rule on the issue of whether provisions in the ADA establishing diabetes as a disability per se also apply to the Rehabilitation Act which does not contain similar language).

seeing, hearing, speaking, breathing, learning, and working." 45 C.F.R. § 84.3(j)(2)(ii) (1998). Major life activities also could include "lifting, reaching, sitting, or standing." *Dutcher*, 53 F.3d at 726 n. 7 (ADA case). Whether an impairment substantially limits a major life activity is determined "in light of (1) the nature and severity of the impairment, (2) its duration or expected duration, and (3) its permanent or expected permanent or long-term impact." *Id.* at 726. Thus, determining whether one is a handicapped person requires a two-prong inquiry. First, a court must determine whether the plaintiff has a physical or mental impairment. If so, the court must then decide whether such impairment substantially limits one or more of the plaintiff's major life activities. *Heilweil*, 32 F.3d at 722.

■ In the case at bar, even if the Court were to assume that Plaintiff has a physical or mental impairment within the scope of the Rehabilitation Act, he still must show that his condition affects a major life activity at the time he was separated under the RIF. *See Heilweil*, 32 F.3d at 723. In *Sherrod v. American Airlines, Inc.*, the Fifth Circuit found no substantial limitation in the major life activities where the plaintiff showed only that she was limited from "*heavy* lifting, not the routine duties of daily living." 132 F.3d 1112, 1120 (5th Cir.1998) (ADA case). There, the plaintiff could lift only "forty-five pounds occasionally and twenty pounds frequently." *Id.* The Fifth Circuit found evidence of this lifting limitation insufficient for a reasonable jury to find a substantial limitation on a major life activity. *Id.* Similarly in *Ray v. Glidden Co.*, where evidence showing that the plaintiff could not lift 44 to 56 pounds continuously all day but could do so for one to three and one-half hours per day, the Fifth Circuit found there was no substantial limitation in a major life activity. 85 F.3d 227, 229 (5th Cir.1996) (ADA case). By comparison, Plaintiff's lifting restriction was, at first, temporarily 40 pounds with certain limits on bodily movement, and finally 20 to 25 pounds, with no other restrictions on bodily movement. The Court finds these physical restrictions do not constitute a substantial limitation of a major life activity *See Hamm*, 51 F.3d at 725 (intermittent, episodic impair-

ments are not disabilities); *Rakestraw v. Carpenter Co.*, 898 F.Supp. 386, 390 (N.D.Miss.1995) (same).

Further, no case law was cited to support Plaintiff's assertion that a person with diabetes is handicap per se. *Cf. Chandler*, 2 F.3d at 1391 (court refused to address the issue of whether a diabetic is disabled per se implicitly under the Rehabilitation Act where pursuant to the ADA a diabetic is deemed disabled explicitly). And as to Plaintiff's allegation that he suffers from PTSD and hypertension, Plaintiff did not present evidence suggesting a genuine issue of fact regarding whether these alleged conditions substantially limit one or more major life activities. The Court thus finds that Plaintiff has not met his burden of showing this element of his prima facie case.

The Court having found that Plaintiff's condition does not affect a major life activity, it similarly finds no evidence that he has a record of impairment. Plaintiff has not shown "that at some point in the past, [he] was classified or misclassified as having a mental or physical impairment that substantially limits a major life activity." *See Sherrod*, 132 F.3d at 1120–21. Plaintiff argues that because the EEOC considered him as having a disability in its April 3, 1997, decision, there is a record of an impairment. However, this argument fails for two reasons. First, the Court finds that the record upon which the EEOC relied does not show an impairment that substantially limits a major life activity. Second, even if the record did show such an impairment, Plaintiff also must show that Defendant relied on this record, which Plaintiff has failed to do. *See Sweet v. Electronic Data Systems, Inc.*, No. 95civ.3987, 1996 WL 204471, at *7 (S.D.N.Y.). Moreover, even if Plaintiff established that he had a record of impairment, the evidence does not reveal a genuine issue as to whether the impairment in fact substantially limits a major life activity. *See Sherrod*, 132 F.3d at 1121.

■ Plaintiff also was not treated as having a substantially limiting impairment. Defendant initially planned to reassign Plaintiff to the vacant WG–2 Laborer position. The

reassignment did not occur because of Plaintiff's lifting restriction and his inability to perform the job. Even after discovering that Plaintiff was not physically qualified for the proposed reassignment. Defendant continued to consider Plaintiff for about eighteen other positions to which he had assignment rights by virtue of his seniority. This demonstrates convincingly to the Court that Defendant did not view Plaintiff as having a substantially limiting impairment and consequently that there is no genuine issue of material fact in this regard.

█ Even if the Court were to find that Plaintiff did have a physical impairment that substantially limits one or more of his major life activities, Plaintiff still must show that he was otherwise qualified. *Heilweil,* 32 F.3d at 722; *Chiari,* 920 F.2d at 315; *Leckelt v. Board of Commissioners,* 909 F.2d 820, 827 (5th Cir.1990). This requires a two-step analysis. First, the Court must examine whether Plaintiff could perform the "essential functions" of his job. *Chiari,* 920 F.2d at 315; *see also School Board of Nassau County, Florida, v. Arline,* 480 U.S. 273, 287 n. 17, 107 S.Ct. 1123, 1131 n. 17, 94 L.Ed.2d 307 (1987). Second, if the Court finds that Plaintiff is unable to perform the essential functions, the Court must then determine whether Plaintiff proved that Defendant could have made a "reasonable accommodation" to enable him to perform his job. *See Chiari,* 920 F.2d at 315; *see also Arline,* 480 U.S. at 287 n. 17, 107 S.Ct. at 1131 n. 17.[11]

The record shows that Plaintiff's lifting restrictions disqualified him from the permanent position Defendant offered him, namely, the WG–6 Motor Vehicle Operator position. The other eighteen positions considered for Plaintiff also required moderate to heavy lift-

ing, which, again, Plaintiff could not perform because of his lifting limitations. There is nothing before the Court to suggest that these lifting requirements are not legitimate. Further, Plaintiff was not considered for clerical positions because he could not type and because he did not have relevant experience. The Court thus finds that Plaintiff cannot perform the essential functions of the available offered positions and that there is no genuine issue as to this matter.

Likewise, there is no evidence before the Court to show that Plaintiff could be reasonably accommodated. Based on the record, accommodation would have required eliminating most if not all of the lifting requirements of the positions, finding an entirely new job for Plaintiff, or creating a new position for him, something which Defendant is not required to do. *See Chiari,* 920 F.2d at 318 (employer not required to fundamentally alter the job and, after accommodation, employee still must be able to perform the essential functions of the job); *Arline,* 480 U.S. at 289 n. 19, 107 S.Ct. at 1131 n. 19 (employer not required to find or create a new job, but cannot deny employment that is reasonably available).

Even had Plaintiff shown that he was handicapped for purposes of the Rehabilitation Act and that he was otherwise qualified or could have been accommodated, he still must show that the challenged employment action was motivated solely by his handicap. *Chandler,* 2 F.3d at 1390; *Leckelt,* 909 F.2d at 825. The evidence before the Court, however, falls far short of supporting such a finding or even creating a genuine issue of fact. The Court therefore concludes that because Plaintiff has failed on several fronts to establish a prima facie case to raise a

---

**11.** The Court acknowledges there is an inconsistency in the Fifth Circuit as to the burden of proof on the reasonable accommodation issue. For instance, in *McGregor v. Louisiana State Univ. Board of Supervisors,* 3 F.3d 850, 859 n. 11 (5th Cir.1993), the court concluded that in a Rehabilitation Act case regarding higher education, the plaintiff had the burden to prove that his requested accommodations were reasonable. On the other hand, the Fifth Circuit in *Prewitt v. U.S. Postal Service,* 662 F.2d 292, 308 (1981), found that in a Rehabilitation Act case the employer has the burden of persuasion on the issue

of reasonable accommodation. More recently, the Fifth Circuit in *Riel v. Electronic Data Systems Corp.,* 99 F.3d 678, 682 (1996), suggested that the plaintiff bore the burden of proof. Finally, in *Johnson v. Gambrinus Co./Spoetzl Brewery,* 116 F.3d 1052, 1059 n. 4 (1997), the Fifth Circuit, after recognizing the discrepancy in the case law, explicitly chose to follow the *McGregor* line of reasoning and thus placed the burden on the plaintiff. The Court now similarly chooses to follow in step the recent trend in the Fifth Circuit of placing the burden of proving reasonable accommodation on the plaintiff.

genuine issue of material fact, he cannot maintain a cause of action under the Rehabilitation Act.

## Title VII

Plaintiff also alleges a violation of Title VII as to his national origin.[12] The Supreme Court established the evidentiary framework for Title VII claims in *McDonnell Douglas Corp. LaPierre v. Benson Nissan, Inc.*, 86 F.3d 444, 448 (5th Cir.1996). A plaintiff suing under Title VII bears the initial burden to prove a prima facie case of discrimination by a preponderance of the evidence. *McDonnell Douglas Corp.*, 411 U.S. at 802, 93 S.Ct. at 1824. The plaintiff must show: 1) that he is a member of a protected class; 2) that he sought and was qualified for an available employment position; 3) that he was rejected for that position; and 4) others who were not members of the protected class remained in similar positions. *Id.* at 802, 93 S.Ct. at 1824; *Vaughn v. Edel*, 918 F.2d 517, 521 (5th Cir.1990). Once established, the burden of production then shifts to the defendant to articulate a legitimate, non-discriminatory reason for the contested employment action. *McDonnell Douglas Corp.*, 411 U.S. at 802, 93 S.Ct. at 1824; *Vaughn*, 918 F.2d at 521. If the defendant comes forward with a credible reason which would support a finding that the challenged action was non-discriminatory, the inference raised by the plaintiff's prima facie case is defeated. *Burdine*, 450 U.S. at 255 and n. 10, 101 S.Ct. at 1094–95 and n. 10. The focus then shifts to the ultimate question of whether the defendant intentionally discriminated against the plaintiff. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 510–11, 113 S.Ct. 2742, 2749, 125 L.Ed.2d 407 (1993).

■ In this cause, it is clear that Plaintiff is a member of a protected class under Title VII. It is also apparent that Plaintiff was separated from employment pursuant to the RIF. Plaintiff, however, has not shown that he was qualified for an available employment position, as discussed earlier. Further, it is unclear whether another person not a member of the protected class remained in a similar position.

■ Even if the Court were to find that Plaintiff established a prima facie case, Defendant has articulated a legitimate non-discriminatory reason for the employment action, namely, the RIF. This would then shift the focus to whether Defendant intentionally discriminated against Plaintiff. The Court finds no tenable evidence showing a genuine issue of fact that the legitimate non-discriminatory reason for the adverse employment action was merely pretextual. Once again, the Court concludes that the Title VII claim cannot survive summary judgment.

## The Age Discrimination in Employment Act

Further, Plaintiff avers Defendant discriminated against him in violation of the ADEA. The ADEA makes it "unlawful for an employer ... to discharge any individual ... because of such individual's age...." 29 U.S.C.A. § 623(a)(1) (West 1985 & Supp. 1997). To establish a prima facie case of age discrimination, the plaintiff "must demonstrate that 1) he was discharged; 2) he was qualified for the position; 3) he was within the protected class at the time of the discharge; and 4) he was either i) replaced by someone outside the protected class, ii) replaced by someone younger, or iii) otherwise discharged because of his age." *Bodenheimer v. PPG Indus., Inc.*, 5 F.3d 955, 957 (5th Cir.1993); *see also Gallo*, 22 F.3d at 1224.

*McDonnell Douglas Corp.* and *Burdine* also provide the analytical framework for an ADEA cause of action in which, as here, there is no direct evidence of age discrimination. *See Rhodes v. Guiberson Oil Tools*, 75 F.3d 989, 992 n. 3 (5th Cir.1996). First, the plaintiff must establish a prima facie case by a preponderance of the evidence, thereby raising an inference of unlawful discrimination. *See Hicks*, 509 U.S. at 506, 113 S.Ct. at 2746–47; *Burdine*, 450 U.S. at 252–53, 101 S.Ct. at 1093; *McDonnell Douglas Corp.*, 411 U.S. at 802, 93 S.Ct. at 1824. The burden of production then shifts to the defendant to proffer a legitimate, non-discriminatory reason for the contested employment action.

---

**12.** Title VII prohibits employers from discriminating against employees on the basis of race, color, religion, sex, or national origin. 42 U.S.C.A. § 2000e–2(a) (West 1994 & Supp.1997).

*Hicks,* 509 U.S. at 506–07, 113 S.Ct. at 2747; *Burdine,* 450 U.S. at 253, 101 S.Ct. at 1093; *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. at 1824. The defendant may meet this burden by offering evidence that, "if believed by the trier of fact, would support a finding that unlawful discrimination was not the cause of the employment action." *Hicks,* 509 U.S. at 507, 113 S.Ct. at 2747. If the defendant meets its burden, the presumption raised by the plaintiff's prima facie case is defeated. *Burdine,* 450 U.S. at 255 and n. 10, 101 S.Ct. at 1094–95 and n. 10. The plaintiff, however, has the opportunity to show that the defendant's rationale was a pretext for discrimination. *See Hicks,* 509 U.S. at 507–08, 113 S.Ct. at 2747–48; *Burdine,* 450 U.S. at 253, 101 S.Ct. at 1093; *McDonnell Douglas,* 411 U.S. at 804–05, 93 S.Ct. at 1825.

■ Here, Plaintiff cannot meet any of the prima facie elements, save age and the fact that he was discharged. First, Plaintiff was not qualified for the positions, as addressed earlier. Second, there is no indication that Plaintiff was replaced by someone outside the protected class or younger, or that Plaintiff was otherwise separated under the RIF because of his age.

Even assuming arguendo that Defendant did establish a prima facie case of age discrimination, the Court finds ample evidence that "would support a finding that unlawful discrimination was not the cause of the employment action." *See Hicks,* 509 U.S. at 507, 113 S.Ct. at 2747. Nor is there proof of a genuine issue of material fact over whether Defendant's rationale—the RIF—was a pretext for discrimination. Accordingly, Plaintiff's ADEA claim also must fail.

### Retaliation for Protected Activity

Plaintiff further alleges unlawful retaliation for protective activity. The *McDonnell Douglas–Burdine* burden-shifting analysis, described earlier, is appropriate for claims of unlawful retaliation. *Sherrod,* 132 F.3d at 1122. To establish a prima facie case of retaliation, Plaintiff must show that, 1) he engaged in a protected activity; 2) an adverse employment action occurred; and 3) a causal connection. *Id.* at 1122 n. 8; *see also, e.g., Long v. Eastfield College,* 88 F.3d 300, 305 n. 4 (5th Cir.1996). If the defendant

provides a legitimate reason for the adverse employment action, then the plaintiff must put forth enough evidence that would allow a reasonable jury to find that the proffered reason is a pretext for retaliation. *Sherrod,* 132 F.3d at 1122; *see McDonnell Douglas,* 411 U.S. at 804–05, 93 S.Ct. at 1825. Thus, the final issue is whether the employer unlawfully retaliated against the employee because of the activity. *Sherrod,* 132 F.3d at 1122. The employee must prove that the adverse employment action would not have occurred "but-for" the protected activity. *Id.* The plaintiff must show retaliation by substantial evidence in order to overcome a motion for summary judgement. *Id.* Substantial evidence means "evidence of such quality and weight that reasonable and fair-minded [persons] in the exercise of impartial judgment might reach different conclusions." *Rhodes,* 75 F.3d at 993 (citing *Boeing Co. v. Shipman,* 411 F.2d 365, 374 (5th Cir.1969) (en banc)).

■ Here, Plaintiff has not made a prima facie case of retaliation. To begin, the RIF was unrelated to subsequent protected activity. Plaintiff filed his EEO complaint on August 30, 1995, claiming discrimination and reprisal for the notice of the RIF termination. The notice of RIF termination was issued on June 9, 1995. Thus the RIF notice predates any protected EEO activity. Furthermore, since Plaintiff's supervisors were never aware of prior complaints of ethnic slurs, the challenged employment action could not have been instigated by these complaints. As such, the Court finds Plaintiff has not shown a genuine issue of fact as to the existence of a requisite causal connection between the protected activity and the challenged employment action. Plaintiff therefore has failed to establish a prima facie case of retaliation.

All told, even assuming for argument's sake that Plaintiff established a prima facie case under any of his tendered theories, he still did not rebut the legitimate non-discriminatory reasons for his separation under the RIF. Indeed, as the MSPB decision provides, Plaintiff was subject to a properly executed bona fide RIF; his competitive area was

defined properly; his position was abolished and Plaintiff properly released from his competitive level; and Defendant properly applied the RIF regulations that affected Plaintiff, including determinations that he lacked qualifications or had physical limitations that precluded assignment to another position.

### Non-discrimination Claims

Having disposed of the more difficult issues above, the Court now turns briefly to Plaintiff's non-discrimination claims raised for the first time in his Response. Defendant asserts that because the Complaint does not allege the non-discrimination matters raised in Plaintiff's Response they cannot be raised now. Nevertheless, Defendant addressed the merits of these issues, arguing that the non-discrimination claims were fully litigated and adjudicated at the administrative level. The Court agrees that the non-discrimination issues raised by Plaintiff fall beyond the scope of the Complaint. As such, the Court sees no need to address at great length the merits of this hypothetical cause of action.

■ Assuming arguendo that Plaintiff had properly pleaded these matters, the Court still is of the opinion that the MSPB's findings should stand. The Court must uphold the findings of the MSPB unless they are arbitrary, capricious, not in accordance with law, obtained without procedures required by law, rule or regulations, or unsupported by substantial evidence. *E.g., Jones,* 912 F.Supp. at 1413; *see* 5 U.S.C.A. § 7703(c). The evidence now before the Court does not show that the MSPB's decision was arbitrary or capricious. If anything, the record is replete with documents that testify to non-discrimination claims fully and fairly adjudicated at the administrative level, and consistently decided against Plaintiff. There being no reason to dwell further on this matter in dicta, the Court concludes that Plaintiff is bound by the findings of the MSPB.

Accordingly, **IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment is **GRANTED.**

**IT IS FURTHER ORDERED** that the above-captioned cause is **DISMISSED.**

### AMENDED MEMORANDUM OPINION AND ORDER AND ORDER DENYING MOTION FOR RECONSIDERATION

On this day, the Court considered Plaintiff's Motion for Reconsideration filed on March 16, 1998. Defendant filed a Reply Letter on March 24, 1998. Plaintiff then filed a Reply on March 30, 1998. The Motion pertains to a Memorandum Opinion and Order ("Memorandum Opinion") the Court issued in this cause on March 4, 1998, dismissing Plaintiff's cause in its entirety. After due consideration, the Court is of the opinion that the Motion should be denied and that the Memorandum Opinion should be amended as provided below.

■ Plaintiff first argues that the Court wrongfully excluded evidence submitted as attachments to his reply letter dated February 17, 1998. The Court does not agree. In the first place, there is no set rule giving parties the right to file reply letters. Whether the Court considers such filings is purely discretionary. As to evidentiary attachments, these should be filed with the original motion for summary judgment or response and not at the eleventh hour as part of a reply letter. Otherwise, the Court would be caught in a cycle of response and counter-response with evidentiary filings *ad infinitum.* The Court may consider such filings, but only in the form of a motion to file additional evidence, with opportunity given to the opposing side to respond in kind. To be sure, Federal Rule of Civil Procedure 56(e) indicates that the Court *"may* permit affidavits to be supplemented . . ." (emphasis added).

The Court addresses only one other issue raised in the Motion. Plaintiff continues to insist that *Prewitt v. United States Postal Service,* 662 F.2d 292 (5th Cir.1981) controls as to the burden of proof for reasonable accommodation. However, this position belies the negative indirect history of the case. Time and again appellate courts have questioned the efficacy of *Prewitt* on the issue of who has the burden as to reasonable accommodation, even in cases with federal agency defendants. *See Johnson v. Gambrinus Company/Spoetzl Brewery,* 116 F.3d 1052,

1059 n. 4 (5th Cir.1997) (non-federal agency case; declined to follow *Prewitt* and placed burden on the plaintiff); *Barth v. Gelb*, 2 F.3d 1180, 1186 (D.C.Cir.1993) (federal agency case; declined to follow *Prewitt* and in dicta indicated that the plaintiff has the initial burden and that burden remains with the plaintiff to prove his case by a preponderance of evidence); *Borkowski v. Valley Cent. School Dist.*, 63 F.3d 131, 138 (2d Cir.1995) (non-federal agency case; declined to follow *Prewitt* and placed initial burden on the plaintiff); *Gilbert v. Frank*, 949 F.2d 637, 642 (2d Cir.1991) (federal agency case; disagreed with *Prewitt* that the plaintiff must carry the initial burden of proof); *Overton v. Reilly*, 977 F.2d 1190, 1194 (7th Cir.1992) (federal agency case; disagreement recognized but not resolved); *Woodman v. Runyon*, 132 F.3d 1330 (10th Cir.1997) (federal agency case; declined to follow *Prewitt* and placed burden of production on the plaintiff); *see also Mitchell v. Crowell*, 966 F.Supp. 1071, 1079 n. 8 (N.D.Ala.1996) (federal agency case; declined to follow *Prewitt* and placed burden of persuasion on the plaintiff). In particular, the Fifth Circuit indicated in *Johnson* that it chose to follow those cases that place the burden of proof of showing reasonable accommodation on the plaintiff. 116 F.3d at 1059 n. 4. Further, in *Woodman*, the 10th Circuit recognized that at the very least, the plaintiff had the initial burden of showing reasonable accommodation. 132 F.3d at 1344; *see also Gilbert*, 949 F.2d at 642 (plaintiff had initial burden and burden did not shift until the plaintiff established a prima facie case). The Court elects to follow the lead of the Fifth Circuit in *Johnson* and what the Court believes to be the trend in other circuits, both in federal agency and non-federal agency cases.

The Court is of the opinion that the balance of the arguments raised by Plaintiff in the instant Motion do not raise new or substantive matters sufficient to warrant mention. The forum for these issues lies elsewhere at this juncture of the litigation.

 The Court additionally notes that it should amend its Memorandum Opinion with an adjustment to the recitation of law as to the Rehabilitation Act. Specifically, the prima facie case in an action based on Section 501 of the Rehabilitation Act ("Section 501 ") does not necessarily include the element of showing that the "program or activity" receive federal funding. Instead, the prima facie case that a plaintiff must establish under a Section 501 action is, 1) that the plaintiff is a handicapped person within the meaning of the statute; 2) that the plaintiff is otherwise qualified for the job; and 3) that the plaintiff was discriminated against because of the handicap. *Woodman*, 132 F.3d at 1338. Another necessary adjustment is an acknowledgment that, first, there is a greater burden on the federal government as to its duties with regard to reasonable accommodation and, second, that there is a resulting lessening of the initial burden on the plaintiff in showing reasonable accommodation, in a Section 501 action—as compared to an action based on Section 504 of the Act. *See, e.g., id.* at 1338 n. 6 and 1344.

Even in view of these adjustments, the Court is of the opinion that the findings and analysis in the Memorandum Opinion remain sound. · As such, all of Plaintiff's causes of action still fail for the numerous reasons explained therein.

Accordingly, **IT IS HEREBY ORDERED** that Plaintiff's Motion for Reconsideration is **DENIED.**

**IT IS FURTHER ORDERED** that the Memorandum Opinion is amended as provided above.

**IT IS FINALLY ORDERED** that the Memorandum Opinion shall remain unchanged in all other respects.