United States Court of Appeals
Fifth Circuit

**F I L E D**

December 22, 2004

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

Summary Calendar
No. 04-50545
_____

JAMES D HANDY

Plaintiff - Appellant

v.

R L BROWNLEE, Acting Secretary of the Army

Defendant - Appellee

_____

Appeal from the United States District Court
for the Western District of Texas
No. 02-CV-351

_____

Before KING, Chief Judge, and DAVIS and STEWART, Circuit
Judges.

PER CURIAM:[*]

Appellant James D. Handy, a civilian employee at an

Army installation, was injured in an accident. After the

accident, he was able to return to work, subject to certain

accommodations. Handy's physical restrictions eventually

became so severe that even with all reasonable

_____

[*]Pursuant to 5TH CIR. R. 47.5, the court has determined that this
opinion should not be published and is not precedent except under
the limited circumstances set forth in 5TH CIR. R. 47.5.4.

- 1 -

accommodations, he could no longer fulfill the core responsibilities of his job. Handy thus chose to take disability retirement. He then filed suit against the Secretary of the Army in the United States District Court for the Western District of Texas, claiming that he was discharged in violation of the Rehabilitation Act of 1973 and Title VII of the Civil Rights Act of 1964. On summary judgment, the court found in favor of the Army. Handy now appeals that decision. We AFFIRM the decision of the district court.

## I.  FACTUAL BACKGROUND

Plaintiff-Appellant James D. Handy ("Handy") was a civilian employee at Fort Hood, Texas from 1980 to 1996.[1] From 1980 to 1986, Handy worked as a telephone mechanic. In 1986, Handy suffered a severe knee injury in a car accident. The injury prevented him from returning to work. In 1990, Handy had knee replacement surgery, which subsequently allowed him to return to work in 1992.

When Handy returned to work he was subject to certain physical restrictions. His medical profile limited him to walking three hours per day; climbing, squatting, kneeling,

---

[1]    Handy had also worked at Fort Hood in the 1970's while on active duty in the Army.

twisting, and standing for two hours per day; and lifting objects no more than twenty pounds.  When he returned, the only vacant position in Handy's old department was that of "telephone worker."  His former position of mechanic had the same basic job duties as this new position, although the old position involved less direct supervision.  Both jobs were informally called "telephone installer."  Handy accepted this position in November 1992, subject to modifications required by his medical profile.  In June 1993, Handy filed an equal employment opportunity complaint claiming that the Army discriminated against him by giving him a lower-grade work title upon his return.  Handy's complaint led to his reappointment as a mechanic.[2]

For the first three years of his return, Handy primarily worked at North Fort Hood.  But in December 1995, a backlog of work orders on the main post required all telephone installers to work on the main post.  Although his supervisors reassured him that his work on the main post would not violate his 1992 medical profile, Handy was nevertheless concerned that working on the main post would

---

[2]    In May 1993, the position of "telephone mechanic" had its title changed to "telecommunications mechanic."  However, the duties of the position remained the same.  For the sake of consistency, we will continue to refer to the position as telephone mechanic.

force him to climb too many stairs. In February 1996, Handy received a new medical profile that drastically increased his physical limitations. His new medical profile limited him to climbing stairs, kneeling, bending, stooping, or twisting for ten minutes per day; carrying up to ten pounds for one hour per day; carrying up to twenty pounds for a half hour per day; and standing or walking for two hours per day. These new restrictions made it impossible for Handy to perform the work of a telephone mechanic.

Handy's supervisors soon began looking for a different position for him that could be tailored to meet his physical restrictions. During this search period, he performed limited work duties and continued to receive his full salary. In late February 1996, while the search was ongoing, Handy suffered a heart attack and spent the next several months recovering. On March 26, while Handy was recuperating, he was notified that there were no vacant positions for which he was qualified.

Handy returned to work on June 18. Upon his return, Handy submitted a worker's compensation claim, but his claim was denied. As an alternative, he submitted an application for disability retirement. However, the United States Office of Personnel Management (OPM) refused to process the

application without documentation that Handy was going to be terminated. On July 8, Handy's supervisor signed a letter that proposed to terminate Handy. After Handy received the notice of proposed termination, he met with Lieutenant Colonel Scott Lofgren ("Lt. Col. Lofgren") and presented a letter from his doctor, Edward Lewis, dated July 11. This letter stated in relevant part: "Let me say again that the profile date, January 18, 1996 is for a specific job as [a telephone mechanic]. He was never able to do that job from the very beginning of his re-employment." Handy met with Lt. Col. Lofgren again on July 16. At this meeting, Lt. Col. Lofgren concluded that the January 1996 medical profile was still operative and that Handy was unable to perform the job of telephone mechanic. On September 4, 1996, OPM approved Handy's application for disability retirement. The retirement was made effective September 9. On October 3, the Army notified Handy that it would cancel the notice of proposed termination, since he had already retired by that point.

## II.  PROCEDURAL BACKGROUND

On November 8, 2002, after exhausting his administrative remedies, Handy filed suit in the United States District Court for the Western District of Texas

alleging that the Army violated the Rehabilitation Act of 1973, 29 U.S.C. § 791 et seq., and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-16.  Once discovery was completed, the Army moved for summary judgment.  On April 7, 2004, the district court granted the Army's summary judgment motion.  On the Rehabilitation Act claim, the court found that Handy failed to establish both that he suffered an adverse employment decision and that he is an otherwise qualified individual with a disability.  On the retaliation claim, the District Court found both that Handy failed to establish that he suffered an adverse employment decision and that he failed to show a causal connection between his protected activity in 1993 and his retirement in 1996. Handy now appeals the district court's decision.

### III.  ANALYSIS

#### A.  Standard of Review

We review a district court's grant of summary judgment de novo, applying the same legal standards as the district court.  See Fierros v. Tex. Dept. of Health, 274 F.3d 187, 190 (5th Cir. 2001).  Summary judgment is appropriate if there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law.  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); FED.R.CIV.P. 56 (c).

The initial burden to demonstrate the absence of a genuine issue of material fact is on the movant.  Id. at 323.  Upon showing that there is an absence of evidence to support an essential element of the non-movant's case, the burden shifts to the non-movant to establish that there is a genuine issue of material fact.  Id. at 324.

**B.    Disability Discrimination Claim**

The Rehabilitation Act prohibits discrimination against an otherwise qualified individual with a disability in programs that receive federal funding. 29 U.S.C. § 794(a); Kapche v. City of San Antonio, 176 F.3d 840, 844 n.27 (5th Cir. 1999).  To establish a claim under the Rehabilitation Act, a plaintiff must show that he: (1) is an individual with a disability; (2) is otherwise qualified to perform the job; (3) was employed in a program or activity that receives federal funding; and (4) was discriminated against solely because of his disability.  Hileman v. City of Dallas, 115 F.3d 352, 353 (5th Cir. 1997); Chandler v. City of Dallas, 2 F.3d 1385, 1390 (5th Cir. 1993).

If this prima facie case is made, courts then apply the familiar McDonnell Douglas burden shifting analysis. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-04

(1973).[3] The burden then shifts to the defendant to produce evidence of a nondiscriminatory reason for the employment action. Id. If such evidence is proffered, the burden of production then shifts back to the plaintiff to show that the nondiscriminatory justification was mere pretext. Id.

Handy failed to make a prima facie showing of discrimination. Specifically, Handy failed to present evidence raising a material issue of fact as to whether he is otherwise qualified to carry out the duties of a telephone mechanic. To determine whether an employee is otherwise qualified, we conduct a two-step inquiry. First,

---

[3] Although the Fifth Circuit has not, in a published opinion, explicitly applied the McDonnell Douglas framework to discrimination claims brought under the Rehabilitation Act, every other circuit except the First and Eleventh has done so. Reg'l Econ. Cmty. Action Program, Inc. v. City of Middletown, 294 F.3d 35, 48-50 (2d Cir. 2002), cert. denied, 537 U.S. 813 (2002); Antol v. Perry, 82 F.3d 1291, 1299 (3d Cir. 1996); Ennis v. Nat'l Ass'n of Bus. and Educ. Radio, Inc., 53 F.3d 55, 57-58 (4th Cir. 1995); Burns v. City of Columbus, Dep't of Pub. Safety, Div. of Police, 91 F.3d 836, 843-44 (6th Cir. 1996); Tyler v. Runyon, 70 F.3d 458, 467 (7th Cir. 1995); Peebles v. Potter, 354 F.3d 761, 766 (8th Cir. 2004); Mustafa v. Clark County Sch. Dist., 157 F.3d 1169, 1175-76 (9th Cir. 1998)(per curiam); Williams v. Widnall, 79 F.3d 1003, 1005 & n.3 (10th Cir. 1996); McGill v. Munoz, 203 F.3d 843, 845 (D.C. Cir. 2000). Additionally, at least one district court in the Fifth Circuit has also applied the framework to a Rehabilitation Act case, citing precedent from other circuits. Burciaga v. West, 996 F. Supp. 628, 634 (W.D. Tex. 1998). Since Handy cannot make the prima facie discrimination case, the potential applicability of the burden shifting framework is not at issue in the instant case. Assuming, arguendo, Handy had sustained his initial burden, we would then apply the burden shifting framework.

we determine whether the employee can perform the core functions of the job.  Chandler, 2 F.3d at 1393.  Second, if the employee is unable to perform the core functions, we must ask whether reasonable accommodations would enable the employee to do so.  Id. at 1393-94.  Ultimately, the plaintiff has the burden of showing that he is otherwise qualified. Id. at 1394.

As to the first step of the otherwise qualified inquiry, it is clear that Handy could not perform the core functions of a telephone mechanic.  As for the second step, based on his 1996 medical profile, Handy's physical limitations were so significant that no reasonable accommodations could have allowed him to perform the essential functions of his job. Further, Handy has failed to identify what accommodations could have been afforded to him that were withheld.  As the plaintiff, he has the burden to identify such accommodations.  Johnson v. Gambrinus Co./Spoetzl Brewery, 116 F.3d 1052, 1059 n.4 (5th Cir. 1997).

Handy also failed to present evidence raising a material issue of fact as to whether he was discriminated against solely because of his disability.  In this case, the alleged discrimination arose from the circumstances

surrounding the termination of his employment.  Because Handy resigned, it can not be said that the Army directly discriminated against him.  Nevertheless, Handy claims that he suffered from a constructive discharge.  Under the constructive discharge doctrine, an employee's decision to resign due to intolerable working conditions is tantamount to formal discharge.  <u>Pennsylvania State Police v. Suders</u>, 124 S.Ct. 2342, 2351-52,  __ U.S. __ (2004). The inquiry focuses on the objective question: "Did working conditions become so intolerable that a reasonable person in the employee's position would have felt compelled to resign?" <u>Id.</u> at 2351.  There is nothing in the record to suggest that Handy was subjected to intolerable working conditions.  At every turn, Handy's supervisors accommodated him and scrupulously honored his medical restrictions.

Handy also cannot prove that he resigned under duress. He claims that he faced the choice of possibly losing his job altogether or seeking disability retirement, in which case he would lose some benefits and his income would be reduced.  Under these circumstances, he claims, he had no choice but to seek disability retirement.  To prove that a government employee resigned under duress, the employee must prove that: (1) he involuntarily accepted the terms of his

resignation; (2) under the circumstances, he had no other alternative but to resign; and (3) the circumstances of his resignation were the result of the government's coercive acts. United States v. Thompson, 749 F.2d 189, 194 (5th Cir. 1984). As to the second element, Handy had two options. He could have retired, as he chose to do, or he could have waited to see if a job for which he was qualified became available before the Army eventually terminated his employment. As one court has stated, "[m]erely because plaintiff was faced with an inherently unpleasant situation in that her choice was arguably limited to two unpleasant alternatives does not obviate the voluntariness of her resignation." Christie v. United States, 518 F.2d 584 (Cl. Ct. 1975). Regarding the third element, the Army's sending the notice of proposed termination was not a coercive act since Handy received the notice upon his own request.

## C. Retaliation

Handy also claimed that his dismissal was in retaliation for his 1993 equal employment opportunity complaint. To prove retaliation, a plaintiff must establish that: (1) he was engaged in activity protected by Title VII; (2) he suffered an adverse employment action; and (3) there was a causal connection between the protected activity and

the adverse action.  <u>Foley v. Univ. of Houston Sys.</u>, 355 F.3d 333, 339 (5th Cir. 2003).  As with the discrimination claim, once the prima facie case is made, the <u>McDonnell Douglas</u> framework applies.  <u>Fabela v. Socorro Indep. Sch. Dist.</u>, 329 F.3d 409, 415 (5th Cir. 2003).

Handy's 1993 complaint satisfies the first element of the prima facie retaliation case.  However, the other two elements are not met.  The second element cannot be met because Handy did not suffer from an adverse employment action.  As discussed above, he voluntarily resigned.  Handy has also failed to raise a material issue as to the third element of the prima facie retaliation case, i.e., the causal connection between his earlier protected activity and his alleged wrongful discharge.  Handy points to a statement made in a memorandum written by Lt. Col. Lofgren as evidence of reprisal.  Lt. Col. Lofgren wrote: "We have attempted to work with Mr. Handy but have been threatened with lawsuits and EEO complaints."  With this as his only piece of evidence, Handy cannot prove retaliation.  This statement does nothing to reflect a retaliatory motive.  It merely documents the difficulties Handy has created for those attempting to accommodate him.

## IV. CONCLUSION

For the foregoing reasons, the decision of the district court is AFFIRMED.